[No. 1496.]

## E. L. ALEXANDER, APPELLANT, *v.* THEODORE WINTERS, ET AL., RESPONDENTS.

CORPORATION—CONTRACT OF PROMOTERS—RATIFICATION.—The responsibility of a contract, made by promoters of a corporation, if it be within the corporate powers of the corporation, may, when the corporation is organized, be expressly or impliedly assumed or ratified, and thus made a valid obligation of the corporation.

ESTOPPEL.—A person cannot accept and reject the same instrument, or, having availed himself of it as to part, defeat its provisions in any other part.

DAMAGES—WATER AND WATERCOURSES—RESERVOIR—FLOODING LANDS—RIGHT OF OWNER TO REDRESS FOR INJURY TO PROPERTY—ESTOPPEL.—In an action for damages caused by defendants opening the gates of a dam, thereby causing a creek to flood plaintiff's land, it appeared that the dam was built by a ditch company, under an agreement between the promoters and one of the defendants that the dam should not raise the waters above the level of the lake at high-water mark, and that he should have the absolute control of the flood-gates and waterways at all times, and also control of the flood-gates and waste ways of said dam at any time after the 1st of July in each year; that plaintiff, acting as the agent of her immediate grantor, was one of such promoters, and had knowledge of such agreement, and participated in the proceedings of such corporation; that, at the time of the injury complained of, she was a stockholder of the company; that the corporation ratified such contract, and such defendant exercised the rights given him by it from the time the dam was constructed—a period of seven years; and that the flooding of plaintiff's lands was caused by his opening the gates of the dam, as he had a right to do under such contract: *Held,* that plaintiff could not recover.

APPEAL from the District Court of the State of Nevada, Washoe county; *A. E. Cheney*, District Judge:

Action by E. L. Alexander against Theodore Winters and others.   From a judgment in favor of defendants, plaintiff appeals.   Affirmed.

*Trenmor Coffin* and *Curler & Curler*, for Appellant:

I.   The court found " that defendants' dam was completed in 1889, and before plaintiff acquired the lands where the injury occurred."   The court must have overlooked the facts

that, by the testimony of the witnesses on both sides of the case, plaintiff and her grantors have owned, occupied and irrigated the land upon which the injury occurred ever since the year 1860; that plaintiff has resided upon or near the land and had charge and control of it, either as owner, or as agent of her immediate grantor, Wm. M. Candler, her brother-in-law, for more than ten years; that whatever rights her grantors had plaintiff succeeded to by her purchase of the land; that both plaintiff and her grantor, W. M. Candler, by and through plaintiff as his agent always, since soon after the completion of the dam of defendants, have protested against the discharging of the stored waters from the dam in such quantities as to cause injury to the land in question.

II. The court also found that "by contract between the reservoir company and Theodore Winters, made and recorded in 1889, the reservoir company, in order to secure certain necessary rights of overflows, obligated itself to reduce the water in the lake to a certain level in the fore part of July of each year." This finding is against all the record and oral testimony introduced by either side. The contract referred to is set out in the separate answer of defendant, Theodore Winters. It was executed by certain individuals on May 18, 1889, more than four months before the defendant reservoir company was in existence. The reservoir company was incorporated September 5, 1889.

III. Neither plaintiff, nor her grantors, nor the defendant reservoir company, was ever a party to this contract, and neither ever ratified it. Neither plaintiff, nor her grantors, had notice of this written contract, or of its contents, until about July, 1896, when it was made an excuse for the damage that was being inflicted upon her.

IV. The corporation defendant never acquired, by conveyance or otherwise, any of the rights of any of the parties to that contract. On the contrary, it appears that all of the incorporators and stockholders and officers of the corporation intended to free it absolutely from all connection with, and entanglements under, that contract. This appears from the contract, and from the records offered in evidence, and from the testimony of John Wright, the secretary of the company.

This contract shows that Winters agreed to give the other parties to it certain rights to dig a ditch across his land and build a dam across the outlet of Little Washoe Lake for the purpose of storing water. The contract is dated May 18, 1889. On May 25, 1889, all the signers of the contract, except Winters, filed and had recorded a notice of location of a water right and ditch. On August 17, 1889, the same parties filed and had recorded a notice of location of Washoe Lake as a reservoir site, and also a claim of all unappropriated waters of streams emptying into the lake, and also the waters of Brown's Creek and Galena Creek mentioned in the prior location and in their contract with Winters. On September 5, 1889, the day the incorporation was formed, these locators, and the signers of the Winters contract, deeded back to Winters all of their rights acquired under their prior locations, leaving Winters the owner of all the rights which it might have been supposed would have been conveyed to the corporation. No one has ever conveyed anything to the corporation, and it has never in any way connected itself with the Winters contract, nor bought any of its stockholders in any way in privity with the contract.

V. The only documents or writings plaintiff was bound by were the articles of incorporation and the by-laws of the company. The only object of the corporation, as disclosed by these documents, was the storage of water for irrigation. They contained no reference to any intention to discharge the water from the reservoir at any other time, or in any other manner, or in any other quantities, than were necessary for the proper irrigation of the lands below the dam. If plaintiff was a stockholder of the company, or an officer of it, and the company violated or exceeded any of its rights or its duties, to her damage, it became liable to her, and she can maintain an action against it for such damage. (*O'Connor v. North Truckee Ditch Co.*, 17 Nev. 245; *Perry v. City of Worcester*, 72 Mass. 544; *Barnstead v. Empire Mfg. Co.*, 5 Cal. 229; *Henderson v. San A. R. R. Co.*, 17 Tex. 560; 67 Am. Dec. 675, and numerous cases cited.)

VI. If the contract had been between the defendant reservoir company and defendant Winters, it would simply have made them joint tortfeasors, and both equally liable to

plaintiff for damages caused by reason of acts done in pursuance of the contract. (*Richardson* v. *Kier,* 34 Cal. 63.)

*R. M. Clarke* and *Wm. Webster,* for Respondents:

I. Appellant was a promoter and organizer of the project to construct the dam at Washoe Lake for the purpose of storing water for irrigating purposes. She contributed to building the dam; she subscribed for shares of stock; she paid assessments; and used the stored water to irrigate her land and crops during the dry months of the year, and cannot, for these reasons, be heard to complain of these acts. She was cognizant of the agreement with Winters, knew that the dam was being constructed, and is estopped to question these acts, or to complain of the consequences naturally flowing therefrom.

II. The corporation ratified the agreement made by the promoters with Winters. It accepted the deed from Winters. It constructed the dam under the contract. It used the dam and waters stored thereby. It regulated the flow of the water under the contract as requested by Winters. These acts abundantly prove ratification. (Cook on Stock, etc., sec. 707, p. 1045, note 1, 2.)

III. Granting, for the argument, that plaintiff was not a stockholder prior to 1893, she had knowledge of the contract and construction of the dam, and the purpose for which it was constructed, and the use to be made of the dam and water, and acquired and held ten shares of the stock in her own name in 1893 and thereafter, and as the transferee of that stock, and as the holder thereof, is bound by the act of the incorporation, and is estopped, as well as the original stockholder who transferred the stock to her. (Cook on Stock, etc., sec. 40, note 3.)

IV. As a stockholder, Mrs. Alexander, appellant herein, participated in and is bound by all the acts of the corporation performed within the scope of its authority under the contract with Winters, and, for this reason, she is barred of her remedy. (Cook on Stock, etc., sec. 730, note 7; 7 Kan. 311.)

V. The appellant was a stockholder at all times. She requested, and it was understood, she would be interested in

the enterprise before the dam was constructed, and before the corporation was formed. She was the owner of the land described in the complaint, which is situated on Steamboat Creek, and this land was benefited, and was intended to be benefited, by the construction of the dam and the storing of the water. She used the dam and water for irrigating purposes, and was benefited thereby; she subscribed for the stock (using Candler's name); paid assessments, attended stockholders' meetings, represented the stock and acted as a true owner thereof. (Thompson on Liability of Stockholders, secs. 163–5.)

By the Court, MASSEY, J.:

The appellant brought this action to recover a judgment for damages against the respondents, caused by flooding water. From the judgment in favor of the respondents, and from an order denying appellant's motion for a new trial, this appeal has been taken.

The complaint charges that in May, 1896, the respondent opened the gates of the dam used for storing water in Washoe Lake, and discharged large quantities of water therefrom in excess of what was necessary to irrigate lands, thereby increasing the flow in Steamboat Creek and causing the creek to overflow its banks and to flood the appellant's land, and to wash sand and gravel on the said land, and to wash out the head gates and irrigating boxes, and to fill up her irrigating ditches, making it impossible for her to save her hay crop. It is further charged in said complaint that on the 12th day of July, 1896, respondent again opened the gates of said dam, and discharged into said Steamboat Creek large quantities of water in excess of what was necessary to irrigate the land lying below said lake, thereby causing said creek to overflow its banks, and to wash sand and gravel upon the appellant's meadow, making it impossible for the appellant to cut and save her crops of hay.

The respondents filed separate answers denying the averments of the complaint, and by way of new matter alleged, in substance, that the Washoe Lake Reservoir and Galena Ditch Company had constructed a dam at the outlet of Washoe Lake for the purpose of holding back the waters to

irrigate lands, and that the appellant was a member of said corporation, and, as such, assisted in the construction and maintenance of said dam, and used the waters thereby restrained to irrigate her lands and the crops growing thereon.
. The facts disclosed by the record, in brief, are: That in the summer of 1896, and before that time, the appellant owned and occupied certain lands in the lower end of Steamboat Valley, which were irrigated by the waters of Steamboat Creek. She and her grantors have claimed and owned said land since about 1860, and have raised and harvested crops of hay thereon since that date. Steamboat Creek is a natural watercourse, with its principal source in Washoe Lake, flowing over and through the lands of appellant. Brown's Creek and Galena Creek are tributaries of Steamboat Creek, the waters thereof flowing into Steamboat Creek above the appellant's land. Huffaker's Creek is also tributary to Steamboat Creek, and flows therein on the appellant's lands. Many gulches and ravines discharge their waters into Washoe Lake and Steamboat Creek and its tributaries above appellant's lands during the spring season and times of freshet. The volume of water flowing into Steamboat Creek is variable, at times being very large, and at other times not sufficient to irrigate the lands of the farmers residing thereon, and exercising the right to use the waters for that purpose.

Ordinarily three or four thousand inches of water flow naturally out of Washoe Lake into Steamboat Creek, and in flood times that creek carries about ten thousand inches. The lands of the appellant are in the lowest portion of Steamboat Valley, and during the times of high water are flooded. In 1860, the parties claiming to own these lands, and certain other parties, constructed a ditch from a point in Steamboat Creek about one mile above the appellant's said land, and over a part thereof, to Huffaker's Creek. This ditch was constructed for the purpose of turning the waters of Steamboat Creek out of its natural channel below the head of said ditch, thereby drying and making available for hay and grazing the lands adjacent to the said channel, and for the further purpose of irrigating the lands of the parties constructing said ditch. This ditch was constructed upon grounds higher than those through which the natural chan-

nel passed. The action of the water flowing through this ditch had gradually deepened and widened the same from the point where it connected with the creek to and partially across the appellant's land. This ditch for a considerable distance above Huffaker's Creek is shallow and narrow. Since the waters of Steamboat Creek were turned into this ditch in 1860 the old channel has filled with sediment and become nearly obliterated. The appellant and her immediate grantor, for whom the appellant was agent, had constructed and maintained dams in this ditch above appellant's lands, thereby retarding the flow and holding back the waters so that the same overflowed the banks thereof, spread over said lands, and irrigated the same. These dams caused a sediment to settle in the ditch and fill the same, and in 1895 the appellant caused to be constructed upon her own land in said ditch a dam for this purpose. She also caused ditches to be constructed at right angles with the channel from this dam, and caused bulkheads to be put in each. These ditches have less fall than the channel which was obstructed, and were not sufficient in size to carry the water in times of high water, and thereby caused the channels both below and above to fill up with sediment, in consequence whereof the water overflowed appellant's land.

The waters of Steamboat Creek being insufficient to irrigate the lands thereon during seasons of scarcity, it was determined by the farmers residing thereon to build a dam at the outlet of Washoe Lake for the purpose of storing the waters therein during the winter and spring months, and at times when there was more water than was needed for irrigation. In pursuance of this purpose notice was posted by a portion of the farmers claiming the surplus water of Galena Creek, and an easement or ditch to conduct the same into Little Washoe Lake, and the right to construct and maintain a dam at the outlet of Little Washoe Lake, for the purpose of storing the waters therein. The respondent Winters owned the land where the dam was to be built and the land on the border of the lake, which would be flooded by the building of the dam; and he objected to the construction of the dam, unless upon condition and subject to his control. These conditions were accepted by the ranchers and were

contained in a written agreement between the parties, whereby Winters granted to the farmers the right to make a dam of solid masonry across the outlet of Washoe Lake of such dimensions in height as the farmers may deem proper for the purpose of flowing water back upon said lake for storage purposes. He also granted the right to make and construct a ditch over his land for the purpose of carrying the waters from Galena Creek into said lake to be stored for use in irrigation. It was further provided that the dam should not raise the waters above the level of the lake at high-water mark. It was also further provided that Winters should have the absolute control over the flood-gates and waterways at all times, and also control over the flood-gates and wasteways of said dam at any time after the 1st of July in each year. This agreement was made on the 18th day of May, 1889. On the 5th day of September, 1889, the farmers locating and claiming the right to construct the dam and ditches above referred to, conveyed their rights to the respondent Winters, which conveyance was duly recorded.

On the same date certain of the farmers locating and claiming the rights above referred to made and filed articles incorporating the respondent, the Washoe Lake Reservoir and Galena Ditch Company. The purpose of said incorporation, as expressed in the certificate thereof, was to construct a dam at the outlet of lower Washoe Lake, and to construct and maintain a ditch to divert water from Galena Creek to lower Washoe Lake, and there store the same for stock, domestic, irrigation and mechanical uses. Certain farmers owning land upon Washoe and Steamboat Creeks were the promoters of this corporation, and the appellant, acting as the agent of her immediate grantor, was also one of the promoters of the same. It also appears that, at the time of the injury complained of, and for some time previous thereto, that appellant was an owner of the stock of said corporation; that for a long time previous, acting as agent for her immediate grantor, she had participated in the proceedings of said corporation, and had claimed the benefits thereof. She admits that she had knowledge of this agreement between Winters and the farmers. In 1889 the corporation constructed the dam at the outlet of Little Washoe Lake,

since which time said corporation has exercised the right for which it was created under the agreement with the said Winters. The appellant has participated in the meetings of the corporation, either as agent of her immediate grantor, or as a stockholder thereof, during these years, and has paid the assessments levied upon the stock by herself and her grantor.

The year 1896, respecting the water supply about Washoe Lake and its vicinity, was unusual. The snows upon the adjacent mountains remained longer than usual; unusual and heavy storms prevailed in May, and Steamboat Creek and its tributaries were full and at times overflowed their banks during the months of May, June and July of that year. On the 29th day of May a great storm filled the banks of those streams, overflowed the same, carried away dams, bridges and bulkheads, and washed sediment and debris over the flooded lands. On the 5th day of May, 1896, the gates of the dam at the outlet of Washoe Lake were raised by the agent of the corporation upon the direction of the respondent Winters, and were kept open until the 15th of June, at which time they were closed. It seems that the lands flooded by the dam on the borders of Washoe Lake belonging to Winters were meadow lands, and the hay growing thereon is usually harvested during July. On the 12th day of July of that year the gates of the dam were again raised by the company, at the request of Winters, pursuant to said agreement, and there were discharged therefrom for some time about 3,500 inches of water into Steamboat Creek. At this time the lands of the appellant were partially flooded, and the waters discharged from the lake ran down upon and spread over a part of appellant's meadow, and prevented her from harvesting the same.

The natural channel of Steamboat Creek above the ranch of the appellant is sufficient to carry within its banks all the water turned therein during July and August, 1896, and has been since 1889, except a small part thereof. The part not sufficient to carry the water has been obstructed and filled with sediment and debris, which has settled therein by reason of the dams and bulkheads maintained by the appellant and her grantor. It further appears that, in the latter part of

June, or early in July, the bulkhead and dam on appellant's ranch were out of repair; that the water was running under the bulkhead and over her lands, and could not be controlled under the conditions of the channel. Prior to 1896 the quantity of water which came down Steamboat Creek was not sufficient to do appellant much, if any, injury, and was often insufficient to irrigate her lands. It further appears that the very large quantity of water stored in 1896 in Washoe Lake, and that the very large quantity of water flowing into Steamboat Creek from said lake, and from streams and ravines tributary to Steamboat Creek, was due to the causes above set out.

The record also discloses that the appellant, before the commencement of this action, had commenced an action against certain other parties for damages growing out of flooding waters during this season, but, as the facts connected with this suit will not in any manner affect the decision of this case, they are omitted.

Upon the facts above set out, the court found that the appellant had been damaged by not being able to harvest her crop in the sum of $500, but gave judgment for the respondents.

The errors assigned are: First, that the findings, conclusions, judgments, decisions and decrees of the court are not supported by the evidence, and are contrary to the evidence. Second, error of the court in rendering a decision, judgment and decree in favor of the respondents.

Without passing upon all the contentions presented by the briefs, we find in the record reason for affirming this judgment. The appellant was a promoter of the project to construct a dam at the outlet of Washoe Lake for the purpose of storing water for irrigation, either as owner of some interest in said land, or as the agent of her immediate grantor. She was in control of the land as the owner of some interest therein, or as the agent of her immediate grantor, before and at the time of the construction of the dam. She was present at the meeting when the corporation was formed. Before the formation of the corporation she was anxious to have an interest in the project and was then informed of its purpose and objects. She requested the witness Crane to obtain such

an interest; she discussed the height of the proposed dam. She subscribed for stock in the name of her immediate grantor; she paid assessments upon this stock for the purpose of constructing the dam. The dam was discussed by her during its construction; she attended some of the meetings of the stockholders, and took part therein; she accepted the benefits of the stored waters to irrigate the land during the dry months of the year; she was cognizant of the agreement with Winters. The dam could not have been constructed without obtaining a concession from the defendant Winters, and she must have known this fact. It is also apparent, from all the facts, that the dam was constructed by the corporation under the contract with Winters; that the waters so stored were used thereunder and the flow of the water was regulated thereby. It is a well-settled proposition of law that a corporation may ratify an agreement made by its promoters. Such ratification may be implied from the acts of the corporation without an express acceptance.

The liability of the corporation under these circumstances does not rest upon a supposed agency of the promoters, but upon the immediate and voluntary act of the company. If the contract is within the corporate powers of the corporation, it may, when organized, expressly or impliedly assume the responsibility of the same, and thus make it a valid obligation of the corporation. This is especially true if the agreement appears to be a reasonable means of carrying out any of the corporate powers or authorized purposes. (*Pratt v. Oshkosh Match Co.*, 62 N. W. Rep. (Wis.) 84; *Huron Printing Co.* v. *Kittleson*, 57 N. W. Rep. (Dakota) 233; *Weatherford R. Co.* v. *Granger*, 28 S. W. Rep. (Tex.) 425; *Colorado Water Co.* v. *Adams*, 37 Pac. Rep. 39; *Bruener* v. *Brown*, 38 N. E. Rep. (Ind.) 318; Cook on Stock and Stockholders, vol. 2, sec. 707.)

The respondent, the Washoe Lake Reservoir and Galena Creek Ditch Company, ratified by its acts the Winters contract. This contract is clearly within the powers of this corporation. The purposes of the corporation could not have been accomplished without the concessions contained in this contract. The conditions of the contract, whereby Winters

reserved the right to control the head gates of the dam, for the purpose of protecting his own property, are reasonable, and the corporation, having accepted the benefits of this agreement, cannot repudiate its burdens. Those rights were exercised by Winters from the date of the construction of the dam up to the time of the alleged injury. The appellant during all these times, either as agent of her immediate grantor, who was a stockholder of said corporation, or as a stockholder of said corporation, accepted the benefits arising under this contract in the irrigation of said land, and acquiesced in the exercise by Winters of those rights reserved in the contract.

It is well settled that a person cannot accept and reject the same instrument, or, having availed himself of it as to part, defeat its provisions in any other part. (Hermann on Estoppel, vol. 2, sec 1028, citations in note.) The same doctrine is forcibly stated by this author in section 1049 and section 1050 of the same volume, wherein he says: "A person shall not be allowed at once to benefit by and repudiate an instrument, but, if he choose to take the benefit which it confers, he shall likewise take the obligations or bear the onus which it imposes; no person can accept and reject the same instrument. * * * He who accepts a benefit under a deed, a will, or other instrument, must confirm the whole instrument, conforming to all its provisions, and renouncing every right inconsistent with them."

The appellant and her grantor considered it necessary that this dam should be constructed for the purpose of storing water to irrigate said lands. The dam was constructed under the Winters contract. She and her grantor accepted the benefits of this contract, and she must now accept the burden imposed by it. Whatever damages she sustained in May and July, by reason of the acts of the respondents, arise from the exercise of the rights under this contract, and the appellant, as a stockholder, under the peculiar circumstances of this case, cannot complain of these acts.

For these reasons the judgment of the district court will be affirmed.