## MURRY v. MONTER et al.

No. 5688.   Decided October 1, 1936.   (60 P. [2d] 960.)

H. A. *Smith,* of Salt Lake City, for appellants.
C. N. *Leatherbury,* of Eureka, for respondent.

FOLLAND, Justice.

This is a suit for specific performance of a contract made between plaintiff and the defendant L. J. Monter, a promoter of the Tintic Prince Mining Corporation, wherein plaintiff agreed to convey an interest in certain mining claims in consideration of 120,000 shares of stock in the corporation. On the organization of the corporation, plaintiff conveyed his interest in the mining claims and thereafter received 60,000 shares of stock. By this suit he seeks to recover an additional 60,000 shares. From a judgment in favor of plaintiff and against the defendants, jointly and severally, defendants appeal.

Murry, Monter, and R. E. Marsell located certain mining claims in the year 1931 which were conveyed by them to the defendant Tintic Prince Mining Corporation at the time of its incorporation in June of 1933. On May 10, 1933, the following agreement was signed by Murry and Monter:

"R. J. Murry, of Eureka, Utah, hereby agrees to make, execute and deliver unto L. J. Monter, or his assigns, upon the date of the incorporation of the Tintic Price Mining Company, in consideration of the transfer to said R. J. Murry of One Hundred Twenty Thousand (120,000) shares in the Tintic Prince Mining Company upon its organization, a good and sufficient deed for conveying and assuring to the said' L. J. Monter, free from incumbrances, all his right, title and interest, estate, claim and demand, both in law and equity, as well in possession as in expectancy of, in, or to that certain portion, claim and mining right, title, or property on that certain vein or lode of rock containing precious metals of gold, silver and other minerals situated in the Tintic Mining District, County of Juab, and State of Utah, and described as follows, to-wit:

"Seven mining claims; namely the Green Back, The Green Back Number 1, The Little Bill, and the Little Bill, Numbers 1, 2, 3, and 4. These claims cover most of the southeast quarter of Section 33,

Township 9 South, Range 3 West of the Salt Lake Meridian.
"Signed this 11th day of May, 1933."

It will be noted the agreement is silent respecting the total number of shares for which the company will be organized. On June 26, 1933, the articles of incorporation of the Tintic Prince Mining Corporation were executed by Monter, Murry, Marsell, Dorothy Monter, and H. A. Smith as incorporators. At the same meeting Murry, Marsell, and Monter made and executed a deed conveying their interest in the mining claims to the corporation. The deed recited a consideration of $10 and other valuable consideration, "receipt of which is hereby acknowledged." The articles of incorporation provided for 1,000,000 shares of stock, 300,000 of which were to be issued to the incorporators in the several amounts subscribed by each, and of which R. J. Murry subscribed 60,000. The articles recited that, "the subscription to the capital stock herein made, amounting to 300,000 shares, is fully paid by the transfer to the corporation of all right, title and interest of the subscribers hereto in and to the following quartz lode mining claims," naming the claims so conveyed. It further recited: "that concurrently with the signing of these articles of incorporation, the locators of said mining claims have executed to this corporation a deed conveying all of their rights in and to said claims to the corporation." Mr. Murry was present at the incorporation meeting. There was testimony to the effect that one of the incorporators made the statement that it had been contemplated to have a 2,000,000-share corporation, but for certain reasons this would be cut in half and only 1,000,000 shares authorized, and consequently the incorporators would subscribe for and have issued to them only one-half the number of shares originally contemplated, but that each would have the same proportion of stock in the corporation; that the articles were in typewritten form; and that a copy was in the hands of the plaintiff Murry, and that they were read in his hearing. Murry testified he signed the articles and the deed, and that he made no claim for more than 60,000

shares of stock at that meeting or at any meeting of the board of directors of which he was a member, but that in September or October of 1933 he mentioned the matter to Monter, who told him that he "didn't have it coming"; that on March 23, 1934, he wrote a letter to L. J. Monter demanding 120,000 shares of stock. Up to that time no stock had actually been issued or delivered to any of the stockholders. Monter, responding to Murry's letter, sent Murry 60,000 shares of stock and notified him that because the corporation was organized for 1,000,000 instead of 2,-000,000 shares, as contemplated when the original agreement was entered into, he was entitled to only 60,000 shares. Murry retained the stock and a short time later commenced this suit.

Plaintiff's contention is that the contract was made with Monter, acting as a promoter for the corporation, and the corporation having accepted Murry's deed and having taken and retained possession of the mining claims, it thereby ratified his contract with Monter and is obligated to perform the contract by the delivery of 120,000 shares of stock. Defendants' defense is that by signing the articles of incorporation wherein he subscribed for only 60,000 shares of stock and in effect agreed to transfer his interest in the mining claims in consideration of 60,000 shares, followed by actual execution and delivery of the deed, Murry made a complete new contract with the corporation covering the same subject-matter as the previous contract with its promoter and inconsistent therewith; that by reason thereof there was a rescission, a waiver, and abandonment of the original contract; and that the rights of the parties are measured by the later contract which had been completely discharged by delivery of the stock. Defendants further urge that by retaining the 60,000 shares of stock after being advised that he was entitled to that number and no more, which stock was accepted and retained, an accord and satisfaction was effected and plaintiff is now precluded from asserting any right to additional stock. It is admitted that L. J. Monter

was a promoter of the corporation and that the interest in the mining claims owned by plaintiff was conveyed by him to the corporation, and that the corporation received the conveyance, took possession of the property, and now retains possession thereof.

The general rule of law is that promoters who undertake to organize a corporation cannot bind the corporation by their contracts and agreements made before the corporation is organized. *Tanner* v. *Sinaloa Land & Fruit Co.*, 43 Utah 14, 134 P. 586, Ann. Cas. 1916C, 100; *Wall* v. *Niagara Mining & S. Co.*, 20 Utah 474, 59 P. 399, 401; 1 Thompson on Corps. (3d Ed.) § 106; 4 Cook on Corps. (8th Ed.) § 707. But that the corporation after incorporation may accept and adopt such a contract which thereupon becomes its own contract, which may be enforced by or against it. *Wall* v. *Niagara Mining & S. Co.*, supra. The rule is succinctly stated in 4 Cook on Corps. (8th Ed.) § 707, p. 2894:

"A corporation accepting the benefits of the contract of its incorporators must accept the burden, and a promoter's contract which has been ratified or adopted by the corporation, or the benefits of which have been accepted by the corporation with knowledge of such contract, may be enforced against it."

The corporate liability where the corporation accepts and retains the benefits of a promoter's contract is on the theory of implied contract or of estoppel. The rule is quite uniform that if a corporation with knowledge of a contract accepts the benefits thereof it will be required to perform the obligations. *Gardiner* v. *Equitable Office Bldg. Corp.* (C. C. A.) 273 F. 441, 17 A. L. R. 431, and note 49 A. L. R. 673

The rule of law on which defendants rely is that stated in 4 Page on the Law of Contracts, § 2492:

"A subsequent contract which does not by express terms abrogate an earlier contract, will, nevertheless, operate as a discharge thereof if it is inconsistent with such earlier contract. If the later contract does not expressly abrogate the earlier in toto, but is inconsistent therewith, the scope of the later contract determines whether any

part of the earlier contract is in force. If the later contract between the parties covers the same subject-matter and has the same scope as the earlier contract, but is in whole or in part inconsistent therewith, the later contract abrogates the earlier contract in toto and is the only contract upon the subject between the parties."

See, also, *Housekeeper Pub. Co.* v. *Swift* (C. C. A.) 97 F. 290; *Sherman* v. *Sweeny*, 29 Wash. 321, 69 P. 1117.

Defendants' reliance on this rule rather presupposes that the corporation would be liable on the contract with the promoter but for the second contract which entirely replaced the first, the scope of the two being identical and the later inconsistent with the first contract. If plaintiff can hold the mining company, it must be on the theory that the corporation adopted the contract between Murry and Monter and made it its own or with knowledge of such contract accepted and kept the benefits. There is no evidence that the corporation by either formal or informal action adopted the Murry-Monter contract. There is no acknowledgment of the contract in the articles of incorporation or by action of the board of directors. There is no evidence tending to show that any of the incorporators other than Murry and Monter had any knowledge of the existence of the contract at the time of the incorporation, and neither of these men so much as suggested the existence of such contract until some months afterwards when Murry demanded 120,000 shares of stock from Monter. The secret knowledge of these men obtained at a time when neither had authority to bind the future corporation cannot be said to be knowledge of the corporation. *Gardiner* v. *Equitable Office Bldg. Corp.*, supra. The evidence does not disclose that the corporation with knowledge of the contract accepted its benefits. The corporation was entitled to rely on the contract made with Murry in the articles of incorporation wherein he agreed to deed his interest in the mining claims for the amount of stock subscribed by him.

While Murry now claims that he at all times expected

to receive 120,000 shares of stock from the corporation, it is conclusively shown by the evidence that he made no claim at the meeting of the incorporators or at any other meeting which he attended thereafter. There is a conflict in the testimony regarding what was said at the incorporation meeting. Plaintiff denies that anything was said about cutting down the stock subscription or that the articles of incorporation were read, although on cross-examination he admitted they were read in part down to the article referring to assessments. The portion referring to the subscription of the incorporators in the corporation was ahead of that. He denied that he read the articles or that he knew at the time that he was subscribing for only 60,000 shares. He admits signing the articles of incorporation and the deed. He denied that anything was said by Monter or others with respect to a 2,000,000 share corporation and testified that a 1,000,000-share corporation was discussed at the time of the signing of his contract with Monter. He testified, however, that at that time Monter told him that he (Monter) was to receive "two hundred and fifty some thousand shares" and Murry 120,000 shares, and he did not remember what the others would receive. It is apparent from this testimony he knew it was in contemplation that the incorporators were to receive more shares than were later specified in the articles of incorporation. The subscribers were cut down materially because L. J. Monter received only 160,000 shares instead of the 250,000 which Murry testified was contemplated at the time of making the contract or the 340,000 shares Monter testified he was to receive. Marsell subscribed for 60,000 shares, but both he and Monter testified he was to have 120,000 or the same as Murry on the original plan. The preponderance of the evidence shows that the corporation was cut down from a 2,000,000 to a 1,000,000 share corporation, and that the amount of stock to be distributed among the subscribers was correspondingly cut. The trial court made no specific finding on this issue. The finding, however, should be as

we have indicated. With this fact found in favor of the defendants, the contract in the articles of incorporation is in substance the same as the one made with Monter although different as to the number of shares. Murry received the proportion of ownership in the corporation for which he contracted. The only contract binding on the corporation was that evidenced by the articles of incorporation wherein plaintiff agreed to convey his interest in the mining claims for the 60,000 shares of stock subscribed. This contract has been fully performed by both parties. The judgment against the corporation therefore cannot stand.

The complaint prayed for a joint and several judgment against L. J. Monter and the corporation, and judgment was entered by the trial court against both defendants jointly and severally. The allegations of the complaint and the evidence submitted in support thereof are to the effect that the contract was made by Monter as promoter for the corporation, and that the contract was to be performed by the corporation when it came into existence rather than by Monter personally. The preponderance of the evidence shows that Murry subscribed for and received the proportion of stock originally contemplated, although the number of shares was cut in half because of the reduced total capital of the corporation. For both reasons defendant Monter cannot be held. *Gardiner* v. *Du Pont* (C. C. A.) 250 F. 227.

Plaintiff relies strongly on the case of *Wall* v. *Niagara Mining & S. Co.*, supra, as decisive of the issues here and in his favor. We see differences in the facts of the cases which distinguish them. In the Wall Case plaintiff sued for payment of cash under a contract which recited that plaintiff was to be paid in cash out of the proceeds of sale of "working capital stock now in said company" in addition to stock subscribed, and in consideration of "having added to said incorporation certain valuable mining claims." The contract was signed in the corporate name by the president

thereof and was executed the same day the deed of convey-
ance to the corporation was executed and the articles of
incorporation signed, practically a contemporaneous act.
The court held the corporation had accepted and adopted
the contract and was therefore liable to plaintiff. The con-
tract itself and the circumstances under which executed
indicate the corporation had full knowledge of its terms
and conditions, and that with such knowledge the company
received and retained the property conveyed. This court
rightly held the corporation could not escape the obliga-
tions imposed.

The judgment is reversed, and the cause remanded, with
directions to the trial court to make findings and decree in
favor of appellants in accordance with this decision. Costs
to appellants.

ELIAS HANSEN, C. J., and EPHRAIM HANSON and
MOFFAT, JJ., concur.

WOLFE, Justice (concurring).

I concur. But I do not think it necessary to place the
decision on the basis that the corporation had no knowledge
of the contract between Murry and Monter. It was a cor-
poration in which Murry, Monter, and evidently a relative
of Monter's, with another co-owner of the claims, were in-
corporators. Well might this contract have been known
to all the incorporators. But the evidence is far more con-
vincing that the contract between Murry and Monter con-
templated a capitalization of 2,000,000 shares for the cor-
poration than that it was contemplated that it was to be
only 1,000,000. Therefore, Murry got exactly what he bar-
gained for with Monter in proportion of ownership, which
is the important thing, and even if the corporation had full
knowledge of the contract between Murry and Monter, it
also had knowledge that that contract contemplated 2,000,-
000 shares and fully performed its obligation to the pro-
moters when it was decided that the capitalization be reduced
to 1,000,000 shares and Murry got his true proportion of
that.