Richard L. CHARTRAND, Appellant,

v.

BARNEY'S CLUB, INC., a Nevada Corporation, Appellee.

No. 20966.

United States Court of Appeals
Ninth Circuit.

June 23, 1967.

Eric L. Richards, Jack I. McAuliffe, Streeter, Sala, Richards & McAuliffe, Reno, Nev., for appellant.

Eli Grubic, Reno, Nev., for appellee.

Before POPE, HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge:

This is a diversity action arising out of a counterclaim by Richard L. Chartrand to compel Barney's Club, Inc., a Nevada corporation, to issue to Chartrand fifteen shares of its capital stock or, in the alternative, to pay damages in the sum of $25,000.[1] After a trial without a jury, judgment was entered for defendant corporation. Chartrand appeals.

We first summarize the district court's findings of fact. In the summer of 1960, Chartrand and Barney E. O'Malia (O'Malia), entered into an agreement in contemplation of incorporating Barney's Club, Inc. In this contract, Chartrand and O'Malia each agreed to contribute $80,000 as an investment in a proposed operation of a casino at Stateline, Nevada, to be known as Barney's Club. In consideration of this contribution, each was to receive an equal interest in fifty-one percent or more of the corporation. Therefore, under the terms of the pre-incorporation agreement, Chartrand was to have a 25½ percent or more interest in the business.

Both O'Malia and Chartrand contributed their respective $80,000, either in cash, services, or by making expenditures on behalf of the corporation. All of Chartrand's contribution was made in cash, but the final $30,000 of his share was not paid until April, 1961, which was after some of the events described below.

Upon the incorporation of Barney's Club, Inc., in August, 1960, capital stock in the amount of $500,000 was authorized, divided into one thousand shares having a par value of five hundred dollars each.[2] Thereafter, on February 1, 1961, Chartrand executed and delivered to the Nevada Gaming Control Board an invested capital questionnaire signed and sworn to by him, in which he claimed only a twenty-four percent interest in Barney's Club, Inc.

This document was filed concurrently with an application for a state gaming license made by O'Malia, as president of the corporation. In this application, it was stated that C. & O. Investment Co., Inc., (C. & O.) had a fifty-one percent interest in Barney's Club, Inc., parceled among Chartrand, forty-five percent, O'Malia, forty-five percent, William F. O'Malia, five percent, and Frances L. O'Malia, five percent. William and Frances were respectively the son and wife of Barney E. O'Malia. Chartrand's stated forty-five percent interest in C. & O. thus amounted to a twenty-four percent interest in Barney's Club, Inc.

At that time Chartrand and O'Malia contemplated the incorporation of C. & O. to hold their stock interests in Barney's Club, Inc. On February 17, 1961, the board of directors of Barney's Club, Inc., comprised of O'Malia and his wife and son, adopted a resolution approving the issuance of 510 shares of Barney's Club, Inc. capital stock to C. & O. On March 14, 1961, articles of incorporation for C. & O. were filed.

1. The original action arose out of a complaint filed by Barney's Club, Inc. to compel specific performance of an alleged agreement whereby Chartrand would transfer 240 shares of Barney's Club, Inc. and all interest in an additional fifteen shares, in return for $200,000. A counterclaim, the subject of this appeal, was filed by Chartrand seeking specific performance of a pre-incorporation contract whereby Chartrand would be issued an additional fifteen shares of capital stock. Barney's Club, Inc. moved to dismiss its complaint for specific performance with prejudice and the court so ordered. The case was thereafter tried in the trial court on Chartrand's counterclaim.

2. This fact does not appear in the findings of fact, but was stipulated to in the pre-trial order.

However, C. & O. was never fully organized or activated.[3] On March 20, 1961, the board of directors of Barney's Club, Inc.,[4] adopted a resolution rescinding its resolution of February 17, 1961, and approving the issuance of capital stock of Barney's Club, Inc., as follows: O'Malia, 240 shares; Chartrand, 240 shares; Frances O'Malia, fifteen shares; William F. O'Malia, fifteen shares.

Capital stock of Barney's Club, Inc. was issued in accordance with the resolution of March 20, 1961. Since June, 1961, Chartrand has repeatedly demanded an additional fifteen shares of the the capital stock of Barney's Club, Inc. This would have given Chartrand a total of 255 shares, representing 25½ percent of the total authorized stock in accordance with the pre-incorporation agreement.

On the basis of these findings, the trial court found and concluded that the knowledge of O'Malia concerning the terms of the pre-incorporation agreement should be imputed to Barney's Club, Inc., and that corporation, at all times pertinent, had knowledge of such agreement. The court further concluded, however, that the evidence created a substantial uncertainty whether Barney's Club, Inc. adopted the pre-incorporation agreement. Finally, the court concluded that the credible evidence refuted the inference of adoption which would otherwise be justified frrom acceptance of benefits with knowledge of the agreement, and Chartrand therefore did not sustain the burden of proving such adoption.[5]

On this appeal Chartrand argues, in effect, that since the trial court found and concluded that Barney's Club, Inc. accepted the benefits of the pre-incorporation agreement by receiving Chartrand's $80,000 contribution, and assertedly did so with imputed knowledge of that agreement, the court erred in further concluding that Chartrand had failed to sustain the burden of proving that the corporation had adopted the pre-incorporation agreement.

3. On April 11, 1961, O'Malia and Chartrand jointly directed the following letter to the Gaming Control Board of Nevada:

"Permission is hereby requested to delete that portion of the application filed February 13, 1961, which reads C & O Investment Co., Inc.

"This corporation will not be formed as contemplated and the applicants will become stockholders in Barney's Club, Inc., dba Barney's Club with beneficial ownership in the latter corporation in the same percentage as they would have held had the C & O Investment Company been incorporated."

4. As stated by the trial court in its order disposing of post-trial motions, " * * * O'Malia was the President and guiding spirit of the corporation and he, his wife and his son comprised the three-man board of directors."

5. Some of the recitals in the conclusions of law indicate that, in coming to this view, the trial court thought that the March 20, 1961 resolution of the board of directors of Barney's Club, Inc., approving the issuance of 240 shares of stock to Chartrand, had been "corroborated" by Chartrand's above-described participation with respect to the application to the Nevada Gaming Control Board for a gaming license, and by the fact that, after that resolution was adopted, Chartrand paid in the final $30,000 of his $80,000 contribution provided for in the pre-incorporation agreement.

This basis for the trial court's ultimate conclusion is also evidenced by the following observation made by the trial court in its order disposing of post-trial motions:

"It is true, as argued by defendant, that although a pre-incorporation agreement is not ipso facto binding upon the subsequently organized corporation, if the corporation, without more, accepts the benefits of a pre-incorporation agreement with knowledge of its terms, it inferentially adopts the agreement and is bound by it, and no express adoption is necessary. But there is more to this case than that. Here the corporation adopted resolutions which were in conflict with the pre-incorporation agreement and these resolutions were ratified by Chartrand in his applications to the Nevada Gaming Commission. In other words, the evidence refutes the inference of adoption by the corporation of the pre-incorporation agreement which acceptance of benefits would otherwise justify."

■ Under Nevada law, if a pre-incorporation contract made by promoters is within the corporate powers, the corporation may, when organized, expressly or impliedly ratify the contract and thus make it a valid obligation of the corporation. This is especially true if the agreement appears to be a reasonable means of carrying out any of the corporate powers or authorized purposes. Alexander v. Winters, 23 Nev. 475, 49 P. 116, rehearing denied, 24 Nev. 143, 50 P. 798.

The pre-incorporation agreement here in question is of a kind which is within the corporate powers of Barney's Club, Inc., and appellee does not contend otherwise.[6] Nor does appellee assert that the pre-incorporation agreement entered into by O'Malia and Chartrand was not a reasonable means of carrying out the corporate powers and authorized purpose of that corporation.

■ Consistent with this Nevada rule, which accords with the weight of authority,[7] it is generally held that if a corporation, with full knowledge of a contract that was formulated before the corporation came into existence, accepts the benefits thereof, it will be required to perform the contract obligations.

European Motors, Ltd. v. Oden, 75 Nev. 401, 344 P.2d 195, 197; Alexander v. Winters, supra, at 49 P. 119; Murry v. Monter, 90 Utah 105, 60 P.2d 960, 962. Such knowledge on the part of the corporation may be imputed from that of a promoter who has become a director, officer and major stockholder of the corporation he has helped to form. As noted above, in recognition of this rule pertaining to imputed knowledge, the trial court specifically found and concluded that O'Malia's knowledge of the pre-incorporation agreement between him and Chartrand should be imputed to Barney's Club, Inc.[8]

Although there are no Nevada court decisions directly supporting this proposition of law enunciated by the trial court, this court has always given great weight to determinations as to the law of a particular state made by a district judge sitting in that state. State Farm Mutual Automobile Ins. Co. v. Thompson, 9 Cir., 372 F.2d 256, 259.

Courts in other jurisdictions are not consistent in their interpretation of this rule, but it is generally held that knowledge of a promoter, without more, is not imputed to a corporation.[9] Most courts, however, recognize an exception

---

6. Nevada Revised Statutes, 78.210(1) provides as follows:
   "1. Any corporation existing under any law of this state may issue stock for labor, services, or personal property, or real estate or leases thereof. The judgment of the directors as to the value of such labor, services, property, real estate or leases thereof, shall be conclusive as to all except the then existing stockholders and creditors, and as to the then existing stockholders and creditors it shall be conclusive in the absence of actual fraud in the transaction."

7. Since a promoter of a corporation could not be an agent of a corporation prior to its incorporation, most courts predicate corporate liability under these circumstances upon principles of novation or acceptance of an offer, rather than ratification of a pre-existing contract. See the cases collected in 18 C.J.S. Corporations § 122b(1), pages 524–525, notes 67 to 75.

8. Further evidence that the corporation had notice of the pre-incorporation agreement is found in the following stipulation in the pretrial order: "The corporation executed Stock Certificate No. 32 in the amount of 255 shares to Richard L. Chartrand on October 3, 1960, which Certificate was never delivered to Mr. Chartrand."
   Moreover, it is important to note that not only did O'Malia, as president and director of a closely held corporation, have actual knowledge of this pre-incorporation agreement, but his immediate family were the remaining members of the corporation's board of directors.

9. See Commercial Lumber Co. v. Ukiah Lumber Mills, 94 Cal.App.2d 215, 210 P. 2d 276, 279; Chapman v. Sky L'Onda Mutual Water Co., 69 Cal.App.2d 667, 159 P.2d 988, 995; Gardiner v. Equitable Office Building Corp., 2 Cir., 273 F. 441, 446.

which allows a promoter's knowledge to be imputed to the corporation where a promoter becomes a director and stockholder in the corporation or is the controlling stockholder.[10]

██ This exception was recognized by this circuit in Federal Land Value Ins. Co. v. Taylor, 9 Cir., 56 F.2d 351, in which it was held that a corporation is chargeable with the knowledge of its promoter in respect of all the facts in relation to a contract made by him where he subsequently becomes the sole stockholder, aside from qualifying shares which were assigned by him to the directors who acted for him. In view of what is said above, we hold that, in the case now before us, the trial court did not err in applying this exception.

In so holding we have not overlooked appellee's argument that the trial court erred in assertedly finding that where the corporation accepted benefits, knowledge of the pre-incorporation agreement would be imputed to it.

The trial court made no such finding with regard to imputed knowledge. It found and concluded that O'Malia's knowledge of the contract should be imputed to Barney's Club, Inc. because O'Malia became the president, director and guiding spirit of the corporation.[11]

The corporation's acceptance of the benefits of the pre-incorporation agreement has nothing to do with the question of imputed knowledge. Instead, it relates to the question of whether the corporation, with such knowledge, ratified that agreement or otherwise obligated itself to fulfill the concomitant obligations which went with the acceptance of benefits under the agreement.

This brings us to the critical question presented on this appeal. In view of the corporation's acceptance of the benefits of the pre-incorporation agreement with imputed knowledge of its terms, it would, under normal circumstances, be obliged to fulfill the obligation of that contract to issue 255 shares of stock to Chartrand. However, because of Chartrand's conduct: (1) in representing to the Nevada agency that his interest in the corporation was twenty-four percent instead of 25½ percent, and (2) his payment of the $30,000 balance due on his $80,000 contribution after being issued only 240 shares of stock, the trial court determined that Chartrand had not sustained his burden of proving that Barney's Club, Inc. had adopted the pre-incorporation agreement. The question we must resolve is whether this determination is supportable on the findings of fact in this record.

In arguing that the findings which were entered by the trial court are sufficient to support the conclusion that Barney's Club, Inc., did not adopt the pre-incorporation agreement, appellee relies upon Murry v. Monter, 90 Utah 105, 60 P.2d 960. In that case a pre-incorporation agreement was entered into between R. J. Murry and L. J. Monter under the terms of which Murry was to receive 120,000 shares of Tintic Prince Mining Corporation in consideration of his conveyance, to the corporation, of his interest in certain mining claims.

However, Murry subsequently signed the articles of incorporation in which it was recited that shares were to be issued to the incorporators, Murry, Monter, R. E. Marsell, Dorothy Monter and H. A. Smith, in the amounts subscribed to by each. Murry subscribed for 60,000 shares. The articles recited that all such subscriptions had been fully paid

---

10. See Morgan v. Bon Bon Co., 222 N.Y. 22, 118 N.E. 205, 206; In re Super Trading Co., 2 Cir., 22 F.2d 480, 482; 18 Am.Jur.2d Corporations § 123 (1965).

11. The trial court made the following statement in granting part of Chartrand's post-trial motion to revise certain portions of the court's findings and conclusions:

> "Defendant is entitled to a finding that the plaintiff corporation knew the terms of the pre-incorporation agreement between defendant Chartrand and O'Malia under the circumstances of this case where O'Malia was the President and guiding spirit of the corporation and he, his wife and his son comprised the three-man board of directors."

by the transfer to the corporation of the interests of each subscriber in the mining claims. There was testimony that, at the incorporation meeting, which Murry attended, it was explained that it had been decided to cut down the intended capitalization from two million to one million shares, and that the subscriptions of the incorporators would be reduced accordingly. Murry was issued only 60,000 shares, and thereafter brought suit to obtain an additional 60,000 shares.

The court in *Murry* held that since there was no evidence tending to show that any of the incorporators other than Murry and Monter had any knowledge of the Murry-Monter pre-incorporation contract at the time of the incorporation, it could not be said that the corporation accepted the benefits with knowledge of such contract. The court concluded that the only contract binding upon the corporation was that evidenced by the articles of incorporation, wherein Murry agreed to convey his interest in the mining claims for the 60,000 shares of stock to which he had subscribed. The court further stated that, although the number of shares received by Murry was cut in half because of the reduced total capital of the corporation, Murry subscribed for and received the proportion of stock originally contemplated.

▮ In the case now before us, however, the trial court specifically found that Barney's Club, Inc., at all times pertinent, had knowledge of the pre-incorporation agreement in question. This finding must be sustained in view of our appraisal of the evidence summarized above.

▮ It is further apparent that here, unlike the *Murry* case, Chartrand would wind up with a smaller proportion of the corporation's total stock (240 shares) than he was originally scheduled to receive under the pre-incorporation

agreement (255 shares). We therefore hold that the trial court erred in concluding that the facts referred to above refuted the inference of adoption which otherwise must be drawn.

In Alexander v. Winters, 23 Nev. 475, 49 P. 116, rehearing denied, 24 Nev. 143, 50 P. 798, supra, the Nevada Supreme Court held that a corporation, having accepted the benefits of a promoter's agreement, cannot later repudiate its burdens. Quoting from a text, the court stated:

> " 'A person shall not be allowed at once to benefit by and repudiate an instrument, but, if he chooses to take the benefit which it confers, he shall likewise take the obligations or bear the onus which it imposes. No person can accept and reject the same instrument.' " 49 P. at 119

In the case now before this court, the benefit accruing to Barney's Club, Inc., was the $80,000 invested by Chartrand. Having accepted the entire $80,000 as part of the capital of the new corporation, with full knowledge of the burdens which would accompany such a contract, Barney's Club, Inc. did adopt the pre-incorporation contract and is now obliged to perform its side of the pre-incorporation agreement, unless it can show that the terms of this agreement were ambiguous, which does not appear to be the case here,[12] or were changed or modified by some subsequent agreement.

It may very well be that there are circumstances which would warrant a conclusion, upon some such theory as contract modification, abrogation, or equitable estoppel, that Barney's Club, Inc., was relieved of what would otherwise be its obligation to issue 255 shares of Barney's Club, Inc. stock to Chartrand. Absent findings of fact which reveal such circumstances, however, we are of the opinion that the ultimate

---

12. It is not questioned that the pre-incorporation agreement provided for the issuance of 255 shares to Chartrand. Thus Chartrand's conduct referred to in the text above, does not have relevance as tending to settle ambiguous terms of the agreement.

conclusion drawn by the trial court cannot stand. Moreover, it is apparent that the trial court did not base its holding upon any of these theories.

Reversed and remanded for further proceedings consistent with this opinion.