ELGGREN et al. v. SNYDER.

No. 4785.   Decided February 10, 1930.   (285 P. 640.)

*Frazer & Wallis*, of Salt Lake City, for appellants.

*W. I. Snyder* and *Dan B. Shields*, both of Salt Lake City, for respondent.

WORTHEN, District Judge.

Plaintiffs brought this action to recover on a contract entered into between one A. E. Hyde, Jr., plaintiffs' assignor, and the defendant. The cause was submitted to the court on an agreed statement of facts, and the court made findings of fact and conclusions of law, and entered judgment in favor of the defendant. Plaintiffs appeal.

The controversy resulting in the suit in question grew out of negotiations between the plaintiffs' assignor, A. E. Hyde, Jr., and the defendant. Hyde claimed to be the owner of certain formulae for the manufacture of a product known as "Diato." The complete negotiations between Hyde and Snyder are set forth in the agreed statement of facts, which reads:

(1) "That on the 20th day of December, 1919, at Salt Lake City, Utah, an agreement in writing was made and entered into by and between the defendant Grant Snyder and A. E. Hyde, Jr., which said agreement was in words and figures as follows:

" 'Salt Lake City, Utah, December 20th, 1919.

" 'A. E. Hyde, Consulting Engineer, Atlas Block, Salt Lake City,

" 'Memorandum of Agreement.

" 'In consideration of $1,000.00 this day paid to me by Grant Snyder, receipt of which is hereby acknowledged, I hereby agree to have trans-

ferred to a corporation organized by Grant Snyder with a capital stock of not less than $50,000.00 the rights to use "Diato" within the confines of the state of California and to deliver to said corporation to be formed, the formula under which said "Diato" is manufactured, provided that said Snyder notifies me on or before the 15th day of January, 1920 that he desires to go on with the deal, in which event he further agrees to pay me an additional $1,000.00 on or before the first day of March, 1920. Further, to have issued to me 20% of the capital stock of the corporation taking over the exclusive rights to use "Diato" in California. Further, a contract with said corporation agreeing to pay me 5% of the net profits of the corporation monthly until the sum amounts to $8,000.00 and this money all to have been paid to me within two years from date of acceptance.

"'In case the said Snyder at any time before the 15th day of January does not desire to go on with this deal; by notifying me of said fact, I agree to return to him the said $1,000.00 not later than the first day of March, 1920.

A. E. Hyde, Jr.'

(2) "That thereafter and on the respective dates on which they bear date, the following indorsements were made upon the face of the said agreement: 'Mar. 2nd, 1920.—This Memorandum of Agreement in its entirety is extended until May 1st, 1920.' [Signed] 'A. E. Hyde, Jr.' 'May 1, 1920.—This Memorandum of Agreement in its entirety is extended until July 1st, 1920.' [Signed] 'A. E. Hyde, Jr.' 'July 5, 1920.—This Memorandum of Agreement is extended until September 1st, 1920.' [Signed] 'A. E. Hyde, Jr.'

(3) "That the sum of $1,000.00 was paid by said defendant to the said A. E. Hyde, Jr., upon the execution of said agreement as therein recited; and the further sum of $1,000.00, as provided in said agreement to be paid on or before the 1st day of March, 1920, was paid by said defendant to the said Hyde within the agreed time as extended by said endorsements.

(4) "That thereafter and on the 18th day of January, 1921, a written addendum to said agreement was made and entered into by and between the said defendant and the said Hyde, and was attached to the said agreement and made a part thereof, the said addendum being in words and figures as follows:

"'Addendum to Memorandum of Agreement Between Grant Snyder and A. E. Hyde, Jr., Dated December 20th, 1919, to Which This Addendum is Attached and Made a Part.

"'January 18, 1921.

"'Permission is hereby given to Grant Snyder to form the Pacific Diato Company as an Arizona corporation with 250,000 shares, par

value $1.00 each, and assign to that company the rights covered in the within Memorandum Agreement to apply to Southern California only, in full payment of the capital stock. Said company must assume the payments to be made to me.

" 'Subsequently, the capital stock can be increased up to 500,000 shares, and the rights for the remainder of California may be assigned by Grant Snyder to the company in full for the increased stock.

" 'A. E. Hyde, Jr., is to receive 20% of the original capital and 20% of the increased capital.

" 'If other corporations are organized to which the rights for Northern California will be assigned, then such separate corporations must also agree to make the payments to me as per attached agreement, and I am to receive 20% of the capital stock of such corporations.

" 'I agree with Grant Snyder, and through him with the corporation or corporations he shall organize, to give him, or them, any knowledge relative to improvements in Formulae that I may hereafter secure or discover that may relate to Diato Products; and Grant Snyder agrees with me that he, and any companies he organizes will agree to give me the benefits of any Formulae or improvements of Formulae that they at any time discover or come in possession of as they relate to Diato Products. He further agrees for himself, and companies to be formed, to scrupulously guard all formulae, and to respect same as secret, and to refrain from using them in any locality other than the State of California.

" 'That he, or they, will use due diligence in seeing that but one man in any company shall be in possession of the Formulae with the exception of a copy of same which shall be sealed and only used in case of emergency.

" 'Grant Snyder further agrees to confine the activities of said company, or companies, to the State of California, and to neither manufacture nor ship outside of the State any materials relative to Diato Products without my, or my assigns, written consent.

" 'A. E. Hyde, Jr.'

" 'Above Addendum accepted and agreed to by me:

'Grant Snyder.'

(5) "That the said Hyde duly and fully performed his part of the said agreement and pursuant thereto communicated to defendant the formula as therein provided, and fully performed all other matters by him agreed to be performed.

(6) "That on January 19, 1921, defendant duly incorporated a corporation under the laws of the State of Arizona, with the knowledge and consent of the said Hyde, and thereafter caused to be issued

to the said Hyde 20 per cent of the stock of said corporation, and the said Hyde or his assigns are now the owners thereof.

(7) "That thereafter and on the 4th day of February, 1921, at the first meeting of the Board of Directors of said corporation, defendant submitted to the said Board of Directors in writing the following communication:

" 'February 4, 1921.

" 'The Board of Directors of the Pacific Diato Manufacturing Company.

" 'Gentlemen: I wish to submit to your company the following proposal:

" 'First: I am the owner of a license from A. E. Hyde, Jr., of Salt Lake City, which grants to me the exclusive right to manufacture and sell Diato products within the State of California. In order to fully identify such license and to prevent mistakes, I am embodying a copy of this proposal preceding my signature. The experience in other states has shown that such license is very valuable.

" 'Second: I propose to assign, set over, and transfer, and if this proposal is accepted and carried out, it will assign, set over and transfer to your corporation the rights, benefits and privileges of said license to apply only to Southern California (more particularly described as the territory of the state lying south of the north lines of the Counties of San Luis Obispo, Kern and San Bernardino).

" 'Third: Your company in its resolutions of your Board accepting this proposal, must accept the terms, conditions and payments provided for in the said license and make the pledges required thereby.

" 'Fourth: It is made the consideration for such assignment and transfer that your Board will authorize as and when requested the issue to me and persons designated by me of the entire capital stock of your corporation, to wit: 250,000 shares of a par value of $1.00 each; such stock to be declared and made full paid and non-assessable; and the said assignment and transfer must be declared by your Board to be of the value of all of said capital stock by proper resolutions. The qualifying shares issued to directors are accepted as issued in accordance herewith.

" 'Fifth: The said license is as follows, to wit: (Copies of Memorandum of Agreement, endorsements thereon and addendum thereto, as in paragraphs 1, 2, and 4 of this statement.)

" 'I beg to be advised of your action upon this proposal.

" 'Yours respectfully,

" 'Grant Snyder.'

(8) "That thereupon the following proceedings were had as shown by the minutes of the Board of Directors of said corporation on the said 4th day of February, 1921:

" 'After the reading of the foregoing proposal, the following resolution was offered by Director Hayes, who moved its adoption:

" 'Resolved, That the proposal of Grant Snyder, Dated February 4th, 1921, and just submitted to the Board, be, and the same is hereby accepted by this corporation; and that the rights, agreements and licenses secured thereunder in the judgment of the directors are worth the entire capital stock of the corporation, to wit, 250,000 shares of the par value of $250,000; and,

" 'Resolved, That the said rights and property are absolutely necessary and desirable for the uses and purposes of this corporation.

" 'Be it Further Resolved, That the Vice-President and the Secretary of the company be, and they hereby are directed to complete the purchase of said rights, agreements and licenses by the original issue of all of said capital stock in accordance with the said proposal, and this corporation hereby accepts the terms and conditions and payments provided for in said license and makes the pledges required there.

" 'Resolved Further, That all of said shares when so issued and delivered shall thereupon and thereby become and be fully paid and nonassessable, in accordance with the Articles of Incorporation of the company, and in compliance with the terms of said proposal.

" 'The motion to adopt said resolution was seconded by Director Street, and being put by the chairman, it was carried by the unanimous vote of all the directors present.'

(9) "That no payments have been made by the said corporation to the said Hyde or his assigns to apply upon said contract; but that the following payments in addition to the $2,000.00 hereinbefore referred to were made thereon by the defendant Grant Snyder to the said A. E. Hyde, Jr., on the respective dates indicated:

| | |
|---|---|
| November 29, 1920 | $250.00 |
| December 6, 1920 | 100.00 |
| December 26, 1920 | 250.00 |
| January 14, 1921 | 50.00 |
| January 15, 1921 | 25.00 |
| January 19, 1921 | 25.00 |
| January 22, 1921 | 50.00 |
| January 29, 1921 | 150.00 |
| January 30, 1921 | 50.00 |
| February 1, 1921 | 50.00 |
| February 5, 1921 | 12.50 |
| February 10, 1921 | 50.00 |
| February 12, 1921 | 25.00 |
| February 16, 1921 | 25.00 |
| February 17, 1921 | 75.00 |

February 20, 1921 ........................................ 25.00
February 22, 1921 ........................................ 100.00
February 25, 1921 ........................................ 50.00
February 28, 1921 ........................................ 50.00
March 1, 1921 ...........................................150.00
May 10, 1921 ........................................... 500.00
June 3, 1921 ............................................ 5.00

(10) "That on and prior to the 18th day of January, 1926, said Hyde, for a valuable consideration, to wit, the sum of Thirty-four Hundred ($3,400.00) Dollars then owing by him to plaintiffs, assigned all his right, title and interest in and to said contract to the said plaintiffs and plaintiffs are now the owners thereof.

(11) "That, subordinate to said assignment, last above mentioned, and for a valuable consideration, the said Hyde assigned all his equity in said contract to George H. Blood, and the said Blood, for a valuable consideration, afterwards assigned the same to the plaintiffs, who are now the owners thereof.

"Signed and dated at Salt Lake City, Utah, this 11th day of August, 1927.

> "Frazer & Wallis,
>    "Attorneys for Plaintiffs.
> "Wilson I. Snyder,
> "Dan B. Shields,
>    "Attorneys for Defendants."

Plaintiffs have assigned many errors, but the only point involved in the case is the liability of Snyder to pay the $8,000 mentioned in the agreement referred to.

Plaintiffs claim that Snyder was a promoter and personally liable for the said amount. The trial court found that the defendant did not at any time agree to pay A. E. Hyde, Jr., or his successor in interest, the plaintiffs herein, or any other person, the sum of $8,000, or any other sum.

Unless the trial court erred in finding that the defendant was not personally liable for the $8,000 the judgment must be affirmed. The duty of the court is to determine what the contract of the parties is; not to make a contract for them. The memorandum of agreement provides for the payment of certain money by Snyder; the transfer by Hyde of rights to use Diato within the state of California to a corporation organized by Snyder; the additional

payment of money by Snyder if he proceeds with the deal; the issuance to Hyde of 20 per cent of the capital stock of the corporation taking over all exclusive rights to use Diato in California, and then follows this language:

"Further, a contract with said corporation agreeing to pay me 5% of the net profits of the corporation monthly until the sum amounts to $8,000.00 and this money all to have been paid to me within two years from date of acceptance."

Plaintiffs insist that the provision of said memorandum of agreement that "this money all to have been paid to me within two years from date of acceptance" is in the nature of a guarantee on the part of the defendant that, in the event and regardless of whether or not the corporation paid 5 per cent of the net profits, the defendant would pay the $8,000 within two years from the date of acceptance. The unambiguous provision of the memorandum of agreement is, however, that a contract would be procured by Snyder from the corporation for the payment to Hyde of 5 per cent of the net profits of the corporation monthly until the sum of $8,000 had been paid. The fair interpretation of the provision that all the money should be paid within two years is that it was a further limitation of time within which the full amount should be paid by the corporation. No fair interpretation of the language used, nor any reasonable inference therefrom, would permit a finding that Snyder was guaranteeing the payment. He may have been a promotor in the sense of organizing the corporation, but he did not undertake to contract for it in the memorandum of agreement, but only to procure from the corporation a contract for the payment to Hyde of $8,000 in the manner and within the time provided. The only fair interpretation allowed by the language of the memorandum of agreement is that at most Snyder was a mere conduit through which Hyde was dealing directly with the corporation organized by Snyder, and, the contract being unambiguous in that respect, Hyde should not now be permitted to substitute Snyder as obligor in the place of the

corporation. Doubtless his back sight is keener than his foresight, but that does not permit him to shift liability from the corporation to Snyder in the absence of fraud on Snyder's part, and no such claim is presented in this case.

That Hyde, as well as the defendant, contemplated that payments should be made by the corporation, is further suggested by the provision in the addendum that "said company must assume the payments to be made to me." Counsel for the plaintiffs insist that the general rule applicable to the transaction involved is stated in 14 C. J. p. 269, as follows: "Of course promoters of a corporation are personally liable on contracts which they have entered into personally, even though they have contracted for the benefit of the projected corporation, and although the corporation has been formed and has received the benefit of the contract, and they are not discharged from liability by the subsequent adoption of the contract by the corporation when formed, unless there is a novation or other agreement to such effect."

But, as we view this case, it is not one that falls within the rule. We cannot hold that Snyder agreed to pay the $8,000 personally for the benefit of the corporation, but we are of the opinion that the memorandum of agreement clearly sets forth that the personal liability of Snyder extended only to the payment of the $2,000, which it is admitted he paid, and that his only further obligation was to organize the corporation and to secure a contract from the corporation to pay Hyde the $8,000 out of the net profits of the corporation, and that no personal liability was to rest upon the defendant for the payments.

Plaintiffs have cited several cases upon which they rely as authority for their position. They cite the case of *Morse* v. *Tillotson & Wolcott Co.* (C. C. A.) 253 F. 340, 351, 1 A. L. R. 1485, and quote the following from the decision of that court:

"Where two or more persons agree that a corporation shall do a certain thing, which they can compel it to do, because they hold a majority of the stock, or otherwise, the corporation is not bound by

their agreement, but they bind themselves individually, unless it is expressly agreed that the other party is looking to the corporation, and not to the promoters."

It need only be said, with reference to that case, that the following language: *"Unless it is expressly agreed that the other party is looking to the corporation, and not to the promoters,"* clearly makes an exception of a case like the one now before the court. Nor can it be said that in this case Snyder agreed that the corporation should pay the money in question. His agreement was that it should agree to pay the same.

If A agrees with B to procure a contract between B and C, and does thereafter procure such contract, the simplest rules of contract would be violated if B could be held liable for the breach of C thereunder solely upon his undertaking to procure such contract.

Plaintiffs cite the following cases: *Queen City Furniture & Carpet Co.* v. *Crawford,* 127 Mo. 356, 30 S. W. 163, 166; *Ennis Cotton Oil Co.* v. *Burks* (Tex. Civ. App.) 39 S. W. 966; *Wells* v. *Fay & Egan Co.,* 143 Ga. 732, 85 S. E. 873, 874; *Fentress* v. *Steele & Sons,* 110 Va. 578, 66 S. E. 870; *Lewis* v. *Fisher,* 167 Mo. App. 674, 151 S. W. 172, 173. But none of the cases cited is authority for the contention of plaintiffs, but rather by inference is authority against them.

In *Lewis* v. *Fisher,* supra, the court said:

"The law is abundantly settled that, where persons associate together with the purpose of forming a corporation, and one or more of them contracts for the corporation with a third person in advance of the formation of the corporation, such person or persons may be held liable to respond on the contract * * *"

In *Ennis Cotton Oil Co.* v. *Burks,* supra, the court said:

"Where the promoters of a company which they intend to organize, but which is not yet in existence, enter into a contract in the name of such company, and there is no agreement that they shall not be personally liable, the promoters will be personally liable on the contract."

In *Wells* v. *Fay & Egan Co.*, supra, the contract was entered into in the name of the proposed corporation for the purchase of certain machinery. The contract was signed "Ficklen Spoke & Handle Company, by L. M. Wells."

In *Queen City Furniture & Carpet Co.* v. *Crawford*, supra, the court said:

"But, even when a corporation de facto becomes de jure, and makes a contract of its own, which theretofore had been entered into by its promoters, the promoters are not thereby relieved from the burdens of their own contract; for the plaintiff may elect whether he will hold the corporation or the promoters, unless he had agreed in the first instance to look to the corporation alone, and the corporation has assumed the liablity."

Both plaintiffs and defendants have cited the case of *Mt. Pleasant Coal Co.* v. *Watts* (Ind. App.) 151 N. E. 7. In that case it was alleged that plaintiff entered into a contract with two of the defendants whereby defendants promised and agreed with plaintiff that, if he would assign a lease that he owned on certain lands, they would form a corporation with a capital stock of $25,000 issued and paid up, and would set aside and allot to the plaintiff one-sixth of the capital stock of said corporation, and would issue to him, in consideration of the assignment of such lease, $2,000 of the capital stock of the corporation, and would advance to him a sufficient sum of money without interest for him to purchase the balance of his one-sixth interest in said corporation, on the condition that he would pay for the balance of the stock out of the dividends accruing on all his stock and by paying $2 per day out of his salary as mine boss and superintendent of the proposed mine to be opened and constructed. Each of them further agreed, in consideration of such assignment of the lease to the proposed corporation, to employ appellant as mine boss and superintendent of the mine at $8 per day, steady employment during the remainder of his natural life. The question in that case was as to the personal liability of the defendants who entered into the contract. A jury found in favor of the plaintiff. That case

certainly cannot be urged as authority for plaintiffs' contention. In the case just cited, the defendants agreed to employ appellant as mine boss and superintendent. It was not a case like the one now before the court. If the defendants had agreed, in consideration of the assignment of the lease to procure a contract from the corporation to be formed, whereby Watts would be employed as mine boss and superintendent, and the defendants had, after the organization of the corporation, procured such a contract, and the corporation had, after its organization, entered into a contract employing Watts as mine boss and superintendent, then the case would be in point.

The judgment is affirmed, at plaintiffs' costs.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.

EPHRAIM HANSON, J., being disqualified, did not participate herein.