No. 31,334

Bertha Hottell, *Appellee,* v. Arthur Kemp, *Appellant* (Vinnie M. Kemp, *Defendant*).

(31 P. 2d 64.)

Opinion filed April 7, 1934.

*John Hartzler* and *George D. Freeze,* both of Goodland, for the appellant.
*Frank J. Horton* and *Charles G. Dockhorn,* both of Goodland, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action to foreclose two mortgages, the defense being that the action was barred by the statute of limitations.

The petition, filed September 9, 1932, set up two notes secured by real-estate mortgages, one note for $3,500 being dated November 4, 1921, and due three years after date, the other note for $1,500 being dated November 25, 1922, and due one year after date, and that interest was last paid December 4, 1926. To avoid a showing that the notes were barred, it was further alleged that plaintiff's husband acted as her agent in connection with the above notes and mortgages, and that he had written letters at various times, of which he had no copies, to the defendant Arthur Kemp with respect to the notes and mortgages, demanding payment thereof, and had received in response letters from said defendant Arthur Kemp dated May 20, 1929, December 5, 1929, April 8, 1930, June, 1930, August 17, 1930, January 12, 1931, January 26, 1931, October 6, 1931, January 15, 1932, and April 17, 1932, which are set out in full in the petition and to the statements of which reference is hereafter made. The prayer was for judgment against both defendants and for foreclosure of the mortgages. The defendants' answer admitted the execution of the notes and mortgages and the agency of plaintiff's husband for her, alleged that both causes of action were barred by the statute of

limitations before the commencement of the action, and specially denied that the letters above referred to were sufficient in themselves to toll the statute of limitations. Plaintiff's reply denied that the action was barred and alleged that defendants paid taxes upon the mortgaged real estate in 1927, 1928, 1929 and 1930, and that such payment of taxes tolled the statute of limitations.

After a trial, in which there was no dispute as to the matters of fact hereafter discussed, the court rendered personal judgment against defendant Arthur Kemp for $7,915.15 with interest, and for the foreclosure of the mortgages and the sale of the mortgaged real estate to satisfy the judgment. Defendant Arthur Kemp appeals.

While the question of whether payment of taxes might toll the statute of limitations is argued, the answer to the question whether the letters written by the defendant Arthur Kemp are a sufficient acknowledgment of liability is decisive of the appeal.

It is admitted by the pleadings that the notes and mortgages were executed and delivered and that interest was last paid December 4, 1926, and that on their faces the notes would have been barred December 4, 1931, or before the action was filed, unless the letters written by Arthur Kemp are sufficient under the above statute to toll the statute of limitations. It would extend this opinion to too great length to quote all of Kemp's letters in full, but in letters of dates shown the following appears:

"MAY 20, 1929.
"I was glad to receive your letter . . . It was sickness that caused me to be back on the interest. . . . After harvest I will try and pay part, and get a loan on the rest, as there is no one loaning now. . . ."

"DECEMBER 5, 1929.
"I just received your letter of Nov. 25, and will admit that I got one letter from you that I never answered. . . . You have been a gentleman and done better than most any body would and we sure grateful to you for it and you will never lose a cent by it either, as I know that we can pay you just as soon as the Dr. dont take every penny we get, . . . I will go to see Jack Peake just as soon as I can and see if we can get another loan. . . ."

"APRIL 8, 1930.
"I received your letter Sat, in regard to that land Mortg— . . . Jack was here last week and we talked it over and he said he would write you that evening and tell you the situation and that their wasent any use trying to get a loan now to release you, Now Charley I sure hate that I cant do any thing just now . . . I suppose that we will have to have a sale after a while and settle up with you and the Bank . . . Now I dont know what

else I could do, but will look out for anything that would do you any good and will do it as fast as I can."

"JUNE, 1930.

"I received your letter some time ago . . . I have just paid the last half of the taxes, but if I dident aim to get this fixed up I would not pay these taxes . . . Now will do all I can as soon as I can and that is all I can tell you just now. . ."

"AUGUST 17, 1930.

"I received your letter . . . I thought that I had sold part of the land and would relieve you, but the trade fell through, but now I cant tell the exact time, but as soon as I can get my crop to market I will do something for you, but dont know just how much . . . I cannot and will not say just how soon but just as soon as I can get the crop to market will help you all I can."

"JANUARY 12, 1931.

"I received your letter the 10 in regard to your mortgages, now Charley I cant give you any definant answer because you know that the price of every thing has all gone to nothing, . . . a man cant do any thing to get money just now but will do anything I can to get some money for you as soon as I can."

"JANUARY 26, 1931.

"I got your letter . . . now you spoke of a foreclosure I did tell you that you would not half to foreclose and I dont aim for you to, yet unless you just want to put unnecessary expense on me just because I have had sickness in my family . . . Now Charley to talk of a foreclosure is all rong and uncalled for as I expect to do the best I can for you and just as soon as I can, I dont blame you a bit for wanting interest and principal to as far as that is concerned . . . I could have paid you all I owed you last fall if it had not of been for her sickness, I paid more Dr. bill and expenses to Denver than your debt is now. If you will just rest easy just awhile I will try and sell the south half and stock enough to get another loan on the north part, . . . just think this over and you will see I am still right."

"OCTOBER 6, 1931.

"I received your letter . . . but if things would settle down again, I could get the money and settle with you all right without selling any land but will sell any part or all to get your money, and am doing all I can to get it as soon as I can . . . If I cant make a sale soon I will put the land in the hands of a real estate man hands and see if they can find a man with the money, but if I cant get the money for you we wont have any trouble settling without any court cost to us."

"JANUARY 15, 1932.

"Received your letter yesterday. Now I nor no body else can say anything definate in regard to money here now . . . But now if I cant get the money we can deed you the land . . . but if I cant settle with you this fall we will make you a Deed and let you have the land;"

"April 17, 1932.

"I received a letter from you last week and have looked around but cant find anybody with any money at all. Now I have told you time and again that I could not do anything til fall . . . you seem to want to deprive us of our home without giving us a chance to do anything, . . . you said you had made inquiry as to taxes, now if you are going to try to force me out of possession it would be foolish of me to make any great effort to get them paid, . . . I have saw more grief over money the last three years than anybody know of but have made enough to pay as we go for everything but interest & taxes and will pay those taxes soon unless you go to crowding me and then their is no use for me to do anything."

The statute which the appellee relied on as tolling the statute of limitations is as follows:

"In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby." (R. S. 60-312.)

The general rule as to the character and sufficiency of such acknowledgments is that they must be clear and unequivocal, of such a character that a promise to pay the debt may be inferred or contain nothing inconsistent with such an inference, and must sufficiently identify the debt or be of such a character that there is no uncertainty as to the debt referred to. (See 17 R. C. L. 891; 37 C. J. 1104 *et seq.*) And our cases hold that there must be a distinct and unequivocal acknowledgment of a present existing liability or a definite promise to pay the note or account. (See *Harbaugh v. Herr*, 131 Kan. 235, 289 Pac. 957 and cases cited, and *Wichita Sanitarium v. Bierschbach*, 136 Kan. 84, 12 P. 2d 806 and cases cited.)

In *Hamilton v. Beaubien*, 92 Kan. 944, 947, 142 Pac. 245, some of the earlier decisions are reviewed, and it was said:

"The phraseology of an acknowledgment is not important, but to remove the bar something more than vague general expressions of a desire and purpose to pay money to another is necessary, and nothing short of a distinct, direct and unequivocal admission of a present subsisting liability is sufficient." (p. 947.)

In *Carbett v. Hoss*, 98 Kan. 290, 291, 157 Pac. 1195, the test was said to be:

"To revive a debt by this means there must be an explicit written acknowledgment signed by the debtor, of an existing debt upon which he is then liable."

And cases in support of the rule are cited.

In *Cosandier v. Junod,* 127 Kan. 524, 526, 274 Pac. 276, it was said:

"It is not necessary to admission which will satisfy the statute that the debtor use the words, 'I acknowledge this is an existing debt' or 'I am now liable on this note' or 'your claim against me is valid', or any other formula which may be made up from the words of the statute and the words used in the opinions of this court interpreting the statute. All that is necessary is that the debtor manifest 'acknowledgment of an existing liability, debt or claim.' " (p. 526.)

In view of the fact that in correspondence between parties not versed in the law there is bound to be used language which differs in many particulars from that which has heretofore received the attention of this court, no attempt is made here to do more than show the principle which has guided the court in deciding former cases, and to set forth the definitions the court has heretofore given. Tested by the above definitions, do the letters, portions of which are quoted, constitute a sufficient acknowledgment?

First, is there an unequivocal admission of a present, subsisting liability? The debtor refers to "that land mortg-" and "in regard to your mortgages" and "I could have paid you all I owed you last fall if it had not been for her sickness" and "if I cant get the money for you we wont have any trouble settling without any court cost to us." Bearing in mind that the execution of the notes and mortgages is admitted, as well as the payment of interest on them, we have no difficulty in holding that the letters, on account of the above and also other statements hereafter referred to, disclosed a present subsisting liability. Appellant argues that reference is made only to mortgages, that the note is the thing to be paid and that the mortgage is only security; all well and good, but this court well knows that the word "mortgage" is often carelessly used to refer to "note secured by mortgage."

Second, is the liability sufficiently identified? In addition to the statements about the mortgages, the debtor says "now you spoke of a foreclosure, I did tell you that you would not half to foreclose," "talk of a foreclosure is all rong." "I will try and sell the south half and stock enough to get another loan on the north part." "But now if I cant get the money we can deed you the land . . . but if I cant settle with you this fall we will make you the deed and let you have the land." While there might in some circumstances be

some question as to what mortgage is referred to, there is no contention by appellant that he owes the appellee or anyone else any other mortgage, and the reference to selling part of the land and getting a new loan on the rest, in connection with the debtor's statement "now if you are going to try to force me out of possession it would be foolish of me to make any great effort to get them (taxes) paid," is sufficient to show that the indebtedness to which he refers is the notes and mortgages on which the suit is grounded.

In addition to what has been said under the above headings, the debtor not only does not deny the debt, but he reaffirms his agreement to pay it. "After harvest I will try and pay part . . . as I know that we can pay you just as soon as the Dr. dont take every penny we get." "Now will do all I can as soon as I can." "But as soon as I can get my crop to market I will do something for you." "If I cant make a sale soon I will put the land in the hands of a real estate man hands and see if they can find a man with the money but if I cant get the money for you we wont have any trouble settling without any court cost to us." Very possibly appellant can find decisions holding that some one or more of the above statements are not sufficient, but taken in connection with all of the others, they show not only an acknowledgment of the debt but an intention and promise to pay it.

The plaintiff sustained the burden of showing that the statute of limitations had been tolled, and the judgment of the lower court allowing a recovery on the notes and foreclosing the mortgages was correct and is affirmed.