KAHN v. PERRY ZOLEZZI, Inc. et al.

No. 7346. Decided December 27, 1950. (226 P. 2d 118)

See 37 C. J. S. Frauds, Statute of, sec. 285. Self-dealing by corporate directors, see note 153 A. L. R. 663. See, also, 13 Am. Jur. 950.

*Rich & Elton,* Salt Lake City, for appellants.

*White, Wright & Arnovitz,* Salt Lake City, for respondent.

DUNFORD, District Judge.

The plaintiff began this action by filing a complaint, accompanied by affidavits of attachment and garnishment, and having processes issued upon both special proceedings.

The complaint at that time alleged, in substance, the corporate existence of the defendant Perry Zolezzi, Inc., the residence of the defendant Perry, the making of a promissory note dated June 1, 1946 by the latter to the plaintiff and that on or about the 1st day of July, 1946, the defendant corporation received from the defendant Perry property in the amount of the note upon the corporation's promise to apply such property to payment of the note. That the corporation on September 21, 1946, did pay $3,588.83 upon the note, leaving a balance of $15,000, plus interest and attorneys' fees due.

Nothing was obtained under the garnishment but personal property was attached, the return of the sheriff being filed on April 30, 1947. On May 2, 1947, the parties entered into a stipulation whereby $16,500 was paid to the Clerk of the Court by the corporate defendant in order to obtain release of the attached property, and the property was accordingly released from the attachment.

Summons was not served upon the defendant Perry, and he did not appear in the action except as a witness for the plaintiff.

The defendant corporation's answer to this complaint was filed June 2, 1947, and in it the defendant denied its assumption of the obligation of the note or that it had received property under an express undertaking to pay the obligation and claimed payment of the $3,588.83 was made by

the defendant Perry upon the note from funds of the corporate defendant, but alleges that such payment was without authority of the corporation, and asserted that the claim of liability of the corporate defendant was barred by the Statute of Frauds, Section 33—5—4, U. C. A. 1943.

After all of the foregoing pleadings and processes had been filed, and on November 19, 1947, by leave of Court, the plaintiff amended his complaint by adding a second cause of action in which he set up a situation coming under the bulk sales law, alleged its violation by the corporate defendant and sought to hold the property conveyed by defendant Perry to the corporate defendant, to the satisfaction of the note. Most of the files, briefs and arguments of counsel are concerned with this amendment. After careful consideration of all such matters, this court, as will hereinafter more fully appear, has concluded that if the records of this case support the judgment upon the original complaint and the answer thereto, all questions arising by virtue of the amendment and pleadings thereto become moot.

It is thus necessary that the Court determine first the question of the applicability of the Statute of Frauds pleaded, and if it is found that the cause is not barred by virtue of that statute, then to determine whether the evidence introduced and admitted is sufficient to support the findings and conclusions of the trial court that the corporate defendant did receive property from the defendant Perry, sufficient to pay plaintiff's note, upon its express undertaking to pay the said note. If it is so determined, the judgment must be affirmed.

Section 33—5—4, U. C. A. 1943, so far as material to this case, provides:

"In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, is in writing, subscribed by the party to be charged therewith: * * *

"(2) Every promise to answer for the debt, default or miscarriage of another."

The complaint does not allege that the agreement was in writing and defendant's demurrer, which was overruled by the trial court, attacks the pleading on that ground. Nevertheless, the plaintiff strenuously contends that sufficient memorandum in writing appears in the evidence to answer the requirement of the statute.

Section 33—5—6, however, provides exceptions to the requirement that a promise to answer for the obligation of another must be in writing, in which cases such promise "is deemed an original obligation of the promisor and need not be in writing," and sub-section (1) provides:

"(1) Where the promise is made by one who has received property of another upon an undertaking to apply it pursuant to such promise, * * *."

Plaintiff's original complaint clearly pleaded within the exception of the above statute. If the evidence establishes that the corporate defendant did receive such property upon such an undertaking, the Statute of Frauds does not apply.

Prior to negotiations between the defendant Perry and Stephen Zolezzi, Mr. Perry and one Nielson operated a partnership which appears to have been engaged generally in poultry sales, purchases and processing, which firm had accumulated a considerable amount of property, real and personal, and had accumulated also a considerable amount of debt. On July 17, 1946, Mr. Perry and Mr. Zolezzi entered into a pre-incorporation agreement by which Perry was to obtain from Nielson, conveyance of all real and personal property used in the partnership business, at which time it was provided a corporation was to be formed known as Perry-Zolezzi, Inc., which should have an authorized capitalization of $200,000, represented by that many shares of capital stock at $1 per share, 100,000 shares of this amount was to be issued.

The new corporation was to lend Mr. Perry $50,000 upon his unsecured note, the money to be deposited in the First National Bank of Salt Lake City to be disbursed upon written directions of Perry after title insurance had been obtained upon the buildings, land and equipment, showing title to such property vested in the new corporation. The agreement then sets forth the Nielson & Perry liabilities amounting to $164,000, and provides the source of funds to discharge these liabilities. They are:

$80,000 by loan secured by mortgage upon the property.

50,000 cash by Mr. Zolezzi's subscription to capital stock.

10,000 to be contributed directly by Perry.

18,000 turkey drafts owned by Perry.

10,000 accounts receivable and turkey inventory carried by Nielson & Perry.

_____

$168,000 Total (or $4,000 more than sufficient to discharge the Nielson & Perry obligations.)

Perry then agreed that he would contribute in exchange for cancellation of $40,000 of the $50,000 note given to the corporation and the issuance to him of 49,000 shares of stock in the new corporation @ $1 per share or $89,000 total credit, the following:

(a) His equity in the real estate ................................$55,000

(d) Cash difference between the above schedule and the total of Nielson-Perry debts................... 4,000

(c) Personal property ....................................... 30,000

_____

Total ...............................................................$89,000

Contained within item (b) next above there is this provision: "It is understood that the liability due Sher Kahn,

in the amount of $23,588.83, may be settled temporarily by the payment of $5,000 in cash and the execution by Mr. Perry of a note for the balance or $18,588.83. In such event, the cash remaining in the hands of the First National Bank of Salt Lake City, to be transferred by Mr. Perry to the new corporation will be increased by $18,588.83 and will be subject to the obligation incurred by Mr. Perry in the same amount of $18,588.83."

It is conceded that the note sued on by the plaintiff is the note given by defendant Perry after application of the $5,000 cash referred to above.

This agreement also provided that Perry was to be director and general manager of the new corporation.

The articles of incorporation were filed July 22, 1946, and on July 29, 1946, a special Board of Directors meeting was held. The minutes of this meeting disclose that Mr. Perry and Mr. Zolezzi were present and that Director Leonard W. Elton was absent. These are the three directors provided to be such in the pre-incorporation agreement. They show, too, that Mr. Perry had been made president of the defendant corporation. Mr. Perry testified that he had been made general manager of the company, all of which was in accordance with the pre-incorporation agreement. The minutes also disclose selection of the First National Bank of Salt Lake City as depository of corporate funds. This was in accordance with the pre-incorporation agreement. They show approval of a loan of $50,000 to Perry by the corporation, which was also provided in the pre-incorporation agreement. They show approval of the issuance of 49,000 shares of capital stock to Perry at $1 per share and the cancellation of $40,000 of the Perry note to the corporation upon receipt of the same property amounting to $89,000 as set forth in the pre-incorporation agreement. They show approval of the obtaining of a loan in the sum of $80,000 from the

First Security National Bank of Salt Lake City and securing the same by a mortgage upon corporate property. This also is in accordance with the pre-incorporation agreement.

Reference is made in the minutes as follows:

"The chairman stated that under and pursuant to the *original understanding which had been agreed upon* for liquidation of certain outstanding claims of creditors of Nielson & Perry, a partnership, this corporation should lend to said W. R. Perry the sum of $50,000, which loan would be evidenced by the unsecured note of Mr. W. R. Perry, payable to the order of this corporation on demand."

The only "original understanding which had been agreed upon," as shown by the evidence was the pre-incorporation agreement, which is itself entitled "Memorandum of Understanding and Agreement, etc." A resolution was then adopted which provided deposit of the funds of the corporation in the First National Bank of Salt Lake City, as is provided in the pre-incorporation agreement.

In setting up the stock transaction between Perry and the corporate defendant, the minutes say:

"Consideration was next given *to the offer* by Mr. Perry [see *Wall v. Niagara Mining* [& Smelting] Co. infra, for the significance of this language.] to convey to the corporation certain real and personal property in consideration of the issuance of 49,000 shares of this corporation's common capital stock and the cancellation of $40,000.00 of the indebtedness owing by said W. R. Perry to this corporation, evidenced by the unsecured promissory note hereinbefore referred to in these minutes."

The resolution which follows the above quotation authorizes the transaction and sets out the schedule of property to be conveyed by Perry in substantially the same wording and in exactly the same amounts as set forth in the pre-incorporation agreement, one item of which is referred to in the pre-incorporation agreement as:

"(b) Any cash remaining in the hands of the First National Bank of Salt Lake City, which remains out of the sum of $168,000 deposited under item (6) above, after payment or other settlement of all liabilities of the partnership amounting to $164,000, per item (5).

"Minimum net cash expected to be contributed, $4,000."

The minutes placing this item in the following language:

"(b) Cash remaining in the hands of the First National Bank of Salt Lake City, *after the payment of certain creditors*, the minimum net cash which is expected to be contributed, $4,000.00."

It is under this sub-paragraph (b) of the pre-incorporation agreement, that special reference is made to the Sher Kahn obligation quoted above, indisputably indicating that that obligation was specially included within the obligations which the incorporators intended should be taken over and paid out of funds provided in the First National Bank of Salt Lake City by the corporation, by which the net remainder ($164,000 of debt subtracted from $168,000 of assets received to pay debts) of $4,000 was arrived at. The minutes show the source of this $4,000 item to be the balance of cash remaining in the bank "after payment of certain creditors." No other creditors are shown to have been substituted in the consideration of the Board of Directors than were considered in the pre-incorporation agreement, so it must be conclusively assumed that the debt of Sher Kahn was one of the items before the Board when it adopted the resolution shown in the minutes.

The pre-incorporation agreement provided agreement of the parties to having the new corporation execute an agreement with O'Brien, Spoterno, Mitchell & Compagno Bros., Inc., a California Corporation. The minutes show adoption of a resolution of the Board of Directors authorizing that agreement.

There is nothing in this record to indicate that the new corporation did not receive all of the property from W. R. Perry which the incorporators under the terms of the pre-incorporation agreement offered to it. In fact, it was stipulated that the real estate was conveyed to it by Mr. Perry on July 27, 1946, and Mr. Perry testified without denial that on or about the same date he also transferred "all of the assets, stock in trade, merchandise, fixtures,

furniture, equipment, supplies, accounts receivable, notes receivable, and all other assets that you (he) had used in that business to Perry-Zolezzi Company, a Corporation," all of which were set up on the books of the company by Mr. Smith Evington, a certified public accountant for "Perry-Zolezzi Company."

Furthermore, Mr. Perry testified that in September or October thereafter, and after Mr. Perry had made a payment upon the Sher Kahn note from corporate funds, Mr. Zolezzi and a Mr. Pinska, who, Mr. Duke testified, was associated either with Mr. Zolezzi's personal business or his company in San Francisco, and who was paid for services upon a bill rendered to the defendant corporation by Mr. Wrixon, attorney for Mr. Zolezzi, came over, and Mr. Pinska checked over the books of the corporation, and in referring to the payment made to plaintiff from corporate funds stated that "nothing was said about it wasn't right."

From this evidence, the trial court found that the preincorporation agreement had been adopted by the defendant corporation, that it had received and accepted its benefits and was thereby bound to its obligations. In that finding and conclusion there is no error. *Wall* v. *Niagara Mining & Smelting Co.*, 20 Utah 474, 50 P. 399; *Tanner* v. *Sinaloa Land & Fruit Co.*, 43 Utah 14, 134 P. 586; *Murray* v. *Monter*, 90 Utah 105, 60 P. 2d 960.

So concluding, it is not necessary to determine whether or not there is sufficient memoranda in writing of the agreement of the corporate defendant to take the case from the Statute of Frauds, nor to determine whether such proof would be such a variance from the allegations of the complaint as to prevent the Court's considering them for such purpose.

Appellants' only assignment of error directed to the first cause of action is in admitting certain evidence and refus-

ing to strike the same and in making Findings of Fact thereon. We have carefully examined the record and find no merit to the contention as to admissibility. The allegations of the complaint and denial of the answer that the defendant corporation received property sufficient, and upon its express undertaking, to pay plaintiff's note made all of the matters referred to material and admissible. A further question, however, is raised as to the power of Perry to transfer the plaintiff's note account from the books of the Nielson & Perry partnership, to the books of the defendant corporation as a liability of the latter in view of the fact that Perry was the original and primary obligor and became president and general manager of the corporate defendant and in the latter capacity, directed the setting up of the books of the corporation.

It is against public policy for officers of a corporation to deal with others in relation to corporate business for their own separate advantage and the law affords no sanction whatever for such acts. *Elggren* v. *Wooley,* 64 Utah 183, 228 P. 906; *Western Securities Co.* v. *Silver King Consolidated Mining Co.,* 57 Utah 88, 192 P. 664. In this case, however, there was no such dealing. Except for nominal issues of stock to others, it was contemplated that Mr. Perry and Mr. Zolezzi were to own all of the stock of the corporation. The pre-incorporation agreement was between these two men; they were present at the Board meeting when the pre-incorporation agreement was adopted by the corporation, they constituted a majority of the Board of Directors and were thus authorized by law to act. Sec. 18—2—2, U. C. A. 1943. *Lochwitz* v. *Pine Tree Mining & Milling Co.* 37 Utah 349, 108 P. 1128. As president and manager, it became Mr. Perry's duty to see to it that the corporate books and records were all set up. Thus, in setting up plaintiff's note as one of the obligations owing by the corporation, he was acting ministerially and as much in the interest of the corporation as he was in

setting into those books the assets which the corporation received. He was not seeking to gain private advantage as against the corporation or its stockholders. Manifestly Mr. Zolezzi did not think so either, because, even though he had the books examined, he made no objection to inclusion of plaintiff's note, or to the payment thereupon which the corporation had made. Mr. Perry's action in this regard was wholly lawful and proper.

With this conclusion, we find it unnecessary to determine whether error was committed by the trial court in permitting the amendment to the complaint adding the second cause of action, or in any of its rulings based thereupon, or in making Findings of Fact, Conclusions of Law or Judgment thereupon. The trial court in its decree ordered: "That the judgment rendered herein on plaintiff's First and Second Causes of Action are not cumulative, and the satisfaction of one judgment will satisfy and discharge the other."

There is thus no danger of defendant having to answer to a liability twice, or to one greater than its liability upon the note. Where no prejudice results from error committed by the trial court, this court will disregard such error. Sec. 104—14—7, U. C. A. 1943. *Ogden Commission Co.* v. *Campbell,* 66 Utah 563, 244 P. 1029; *Mills* v. *Gray,* 50 Utah 224, 167 P. 358; *Boyd* v. *San Pedro, Los Angeles & Salt Lake Railroad Co.,* 45 Utah 449, 146 P. 282; *Guaranty Mortgage Co.* v. *Wilcox,* 62 Utah 184, 218 P. 133, 30 A. L. R. 1324.

The judgment of the lower court is affirmed. Respondent to recover his costs.

PRATT, C. J., and WADE, WOLFE and McDONOUGH, JJ., concur.

LATIMER, J., having disqualified himself, did not participate herein.