KNOX et al. v. FIRST SECURITY BANK OF UTAH et al.

No. 4380.

United States Court of Appeals
Tenth Circuit.

March 29, 1952.

Peter W. Billings, Salt Lake City, Utah (Beverly S. Clendenin, Salt Lake City, Utah, on the brief), for appellants.

Charles Welch, Jr., Salt Lake City, Utah (Clair M. Senior and Raymond T. Senior, Salt Lake City, Utah, on the brief), for appellee First Security Bank of Utah, executor of estate of A. C. Milner, deceased.

Paul H. Ray, Salt Lake City, Utah (Albert R. Bowen, Salt Lake City, Utah, on the brief), for appellee Milner Corp.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Resting jurisdiction upon diversity of citizenship and the requisite amount in controversy, De Witt Knox and Frances K. MacEwan instituted in the United States Court for Utah this action against First Security Bank of Utah, as executor of the estate of A. C. Milner, deceased, and Milner Corporation to recover for breach of contract. It was alleged in the complaint that Frank Knox was

dead; that plaintiffs were his surviving heirs and the distributees of his estate; that A. C. Milner was dead; that defendant First Security Bank of Utah was the executor of his estate; that in March, 1909, Milner, for value received, executed and delivered a written undertaking to Frank Knox; that as provided in such agreement, the mining property therein referred to was conveyed to the defendant Milner Corporation; that such defendant still owned such property; and that in November, 1924, Milner, then president of the defendant Milner Corporation, made a new agreement and undertaking on behalf of himself and the defendant Milner Corporation to perform the original undertaking. And it was further alleged that on or about December, 1947, the defendant Milner Corporation entered into a long-term lease in which it leased to Columbia Iron Mining Company a portion of such property; that ever since such date, the defendant Milner Corporation had been and then was able to pay the $25,000 referred to in the undertakings of 1909 and 1924 from royalties and other payments under the lease; and that the defendants had failed, neglected, and refused to pay such sum, or any part thereof. Judgment for $25,000, with accrued interest, was prayed against both defendants. A copy of the written undertaking executed by Milner in favor of Frank Knox was attached to the pleading; a copy of the asserted new agreement and undertaking on the part of Milner and the defendant Milner Corporation was also attached; and both were expressly made a part of the pleading. The undertaking from Milner to Frank Knox recited that Stanley B. Milner, during his lifetime, was the owner of interests in certain iron property in Iron and Washington Counties, Utah; that Stanley B. Milner died possessed of such property; that the estate was about to be closed and the assets thereof distributed; and that a corporation would in the immediate future be organized under the laws of Utah to be known as the Milner Corporation, to which such iron property should be deeded. The instrument then provided that Milner, for and in consideration of the sum of one dollar to him in hand paid by Knox,

receipt whereof was thereby acknowledged, and for other valuable considerations, did thereby undertake and agree that he would immediately cause a corporation to be organized under the laws of Utah, to be known as the Milner Corporation, and would cause to be conveyed immediately to such corporation the interests of the estate of Stanley B. Milner in and to such iron property; that immediately upon the organization of the corporation, he would cause it to execute to Knox its obligation and agreement to pay him the sum of $25,000 from the first net proceeds or profits derived by the corporation from the sale of the property or the proceeds thereof; that nothing therein should be construed as a covenant requiring the corporation to sell the property or to work it unless and until it should see fit to do so; and that in no event should the corporation be required to pay the $25,000 or any other sum under the instrument, except from the net proceeds or profits derived by the corporation from the sale of its interest in the property or products thereof. The alleged new agreement or undertaking on behalf of Milner and defendant Milner Corporation was in the form of a letter written on the letterhead of the corporation, addressed to plaintiff De Witt Knox, and signed by Milner. At the outset, it acknowledged receipt of a letter from plaintiff De Witt Knox. It stated that "We have a copy of the undertaking with your father relative to $25,000 to be paid from sale, or profits therefrom, of iron property." It detailed difficulties which had been encountered in the development of the property, detailed improvements and facilities which had been provided, stated that in a short time the property would represent an investment of $200,000 to $250,000 and would have a daily output capacity of 2,000 tons, and expressed the hope that in the near future the iron and steel business would expand rapidly to large proportions. It stated that the demonstration already made by Columbia Steel Company indicated that all claims made in respect to the ability to produce a fine grade of coke and pig iron in Utah at reasonably low costs had been borne out. And it then stated "Just how soon we will

reach that stage when we will begin to liquidate upon the $25,000 agreement with your father is dependent upon the volume of business we do, and the payment of advances we have made to the operating company. You may rest assured, however, that we are keeping the agreement with your father in mind, and that it will be reached at the proper time." The defendants filed separate motions to dismiss the action on the ground that the complaint failed to state a claim or facts upon which relief could be granted. The motions were sustained; judgment was entered dismissing the action; and plaintiffs appealed. For convenience, continued reference will be made to the parties as plaintiffs and defendants respectively, rather than appellants and appellees.

The first contention urged by plaintiffs is that the complaint stated a cause of action against the defendant Milner Corporation, and that the court erred in dismissing the action as against that defendant. It is argued in support of the contention that the original undertaking entered into in 1909 was a promoters contract; that it was accepted and adopted by the defendant Milner Corporation; and that therefore such defendant is liable. It is well settled law in Utah that promoters or those contemplating the organization of a corporation do not have power to enter into a contract with binding effect upon the corporation after it is organized. They lack that power, either as agents or otherwise. But promoters or those contemplating the formation of a corporation may make a contract in furtherance of the corporation and for its benefit; and if the corporation after it comes into existence accepts or adopts the contract, it thereupon becomes the contract of the corporation and may be enforced against it. Wall v. Niagara Mining & Smelting Co., 20 Utah 474, 59 P. 399; Tanner v. Sinaloa Land & Fruit Co., 43 Utah 14, 134 P. 586; Murry v. Monter, 90 Utah 105, 60 P.2d 960; Kahn v. Perry Zolezzi, Inc., Utah, 226 P.2d 118.

Under the law of Utah, a contract made by and with promoters which is entended to inure to the benefit of a corporation about to be organized is to be regarded as an open offer which the corporation may after its formation accept or adopt, as it chooses. And if it does in the exercise of its own judgment accept or adopt the contract and retain the benefits of it, it cannot reject liability under it. Wall v. Niagara Mining & Smelting Co., supra. In the absence of acceptance or adoption of a contract of that kind, the corporation is not liable even though it may have been entered into with the understanding that the corporation would be bound. Tanner v. Sinaloa Land & Fruit Co., supra. But it is not necessary that acceptance or adoption of a contract of that kind be by express action of the corporation entered in the minutes of the directors, or that it be effectuated in any other like formal manner. It may be inferred from acts, conduct, and acquiescence. Wall v. Niagara Mining & Smelting Co., supra.

The original undertaking was an agreement in the nature of a promoters contract. And from what has been said it is manifest that defendant Milner Corporation is not bound by it to make payment of the $25,000 unless it was accepted or adopted in an effective manner. Assuming for the moment that Milner, in his capacity as president of the corporation, was clothed with authority to act for it in accepting and adopting the undertaking, there can be little doubt that the letter written in 1924 constituted an effective acceptance and adoption. The letter referred at the beginning to the undertaking to pay $25,000 from the sale of the property or from profits derived from its operation. It stated in clear terms that the time when liquidation of the obligation would begin was dependent upon the volume of business done and the payment of advances made to an operating company. And it further stated without condition or qualification that the agreement was being kept in mind and would be reached at the proper time. Plainly, the last statement was intended to mean that the obligation would be reached for payment at the proper time. The letter constituted recognition of the original undertaking as an obligation on the part of the corporation to pay the amount specified in the contract at the proper time. And in the circumstances, that

recognition amounted to an effective acceptance and adoption of the undertaking.

It was not alleged in the complaint that the directors of the corporation by formal action accepted or adopted the undertaking, or that they authorized Milner as its president to accept or adopt it on behalf of the corporation. And the letter was silent in that respect. But it was alleged that Milner, then president of the corporation, made a new agreement and undertaking on behalf of himself and the corporation to perform the original undertaking. It was implicit in that allegation that Milner had authority to act for the corporation with binding effect. And his actual authority or the lack of it was an issue for determination at the trial, not on the motion to dismiss the action. Carroll v. Morrison Hotel Corp., 7 Cir., 149 F.2d 404. As against attack by motion to dismiss, the pleading was sufficient in respect to alleging that in the writing of the letter Milner acted for the corporation with authority . Bank of the Metropolis v. Guttschlick, 14 Pet. 19, 10 L.Ed. 335; Baltimore & Ohio Railroad Co. v. Foar, 7 Cir., 84 F.2d 67.

Endeavoring to sustain the judgment dismissing the action against it, the defendant Milner Corporation urges that the contract was not one between Knox and the corporation and was not intended directly or indirectly to benefit the corporation; that it was an undertaking on the part of Milner to fix upon the corporation a liability for the enrichment of Knox, with no consideration or benefit to the corporation; that the only consideration for the execution of the undertaking passed to Milner, not the corporation; and that there is no room for an inference that the corporation received or was intended to receive any consideration or benefit from the agreement. It is well settled in Utah and elsewhere that a corporation cannot bind itself as guarantor or otherwise to discharge an obligation solely for the benefit of another, unless that be one of the purposes for which the corporation was organized. In the absence of a statute or a provision in its charter authorizing it to do so, an undertaking on the part of a corporation to discharge the obligation of another in which it has no interest and from which it derives no benefit is ultra vires and therefore unenforceable. Tracy Loan & Trust Co. v. Merchant's Bank, 50 Utah 196, 167 P. 353; Louisville, New Albany & Chicago Railway Co. v. Louisville Trust Co., 174 U.S. 552, 19 S.Ct. 817, 43 L.Ed. 1081; Williams v. Sawyer Bros., 2 Cir., 45 F.2d 700; Pantaze v. Murphy, 5 Cir., 54 F.2d 895, certiorari denied, 287 U.S. 599, 53 S.Ct. 10, 77 L.Ed. 522. And it is elementary that unless authorized by statute or effective charter provision expressly creating the power, a corporation organized solely for conventional business or commercial purposes may not alien its property by gift or indirect channels of diversion without consideration and not in furtherance of its pecuniary interests. 6 Fletcher Cyclopedia Corporations, §§ 2938, 2939. The alienation or disposition of property of a corporation in that manner constitutes a violation of the rights of the stockholders and is ultra vires.

But the complaint was not fatally infirm and therefore open to attack by motion to dismiss on either of these well recognized principles of law. Rule of Civil Procedure 8(a), 28 U.S.C., requires that a complaint shall contain a short and plain statement of the claim showing that plaintiff is entitled to relief and a demand for the relief to which he deems himself entitled. The purpose of the rule is to eliminate prolixity in pleading and to achieve brevity, simplicity, and clarity. And all doubts or ambiguities concerning the intendment and meaning of the pleaders language must be resolved in favor of the claim attempted to be stated when the complaint is attacked by motion to dismiss the action. Clyde v. Broderick, 10 Cir., 144 F. 2d 348; Porter v. Karavas, 10 Cir., 157 F. 2d 984. Viewed in that manner, the complaint alleged by fair intendment and meaning that Knox sustained detriment and the defendant Milner Corporation received benefit in the transaction as a whole which had its source in the original undertaking. A valuable consideration passed from Knox and that constituted detriment. The corporation acquired the mining property and

that constituted pecuniary benefit, not un-related to the business for which the corporation was organized, and fairly commensurate with the offsetting burden of making payment in the amount and manner specified in the undertaking. The acquisition of the property and the making of the payment in that manner was not solely for the benefit of Milner, or Knox, or both of them. It was in furtherance of the pecuniary interest of the corporation. No consideration passed directly from Knox to the corporation. But that was not essential to the validity of the obligation to pay the $25,000 in the manner specified, after the undertaking had been accepted and adopted by the corporation. It is not necessary that consideration pass directly from the obligee to to the obligor. It is sufficient if there be detriment or disadvantage to the obligee and an element of benefit or advantage to the obligor, or to a third person at his request. Weicker v. Bromfield, 10 Cir., 34 F. 2d 377; Bromfield v. Trinidad National Investment Co., 10 Cir., 36 F.2d 646, 71 A. L.R. 542; Crane Co. v. James McHugh Sons, 10 Cir., 108 F.2d 55; 1 Williston on Contracts § 113, Restatement Contracts § 75. Constituent elements of the claim or cause of action as pleaded in the complaint being that in the course of the transaction Knox sustained detriment and the corporation received benefit in furtherance of its pecuniary interest, the complaint was not open to attack by motion to dismiss on the ground that the obligation was without consideration to the corporation, was not intended to benefit and did not benefit the corporation, and was ultra vires.

 The further contention of plaintiffs is that the complaint stated a cause of action against the defendant bank as executor of the estate of A. C. Milner, and that therefore the court erred in dismissing the action as against that defendant. The argument is that the original contract disclosed on its face an intention on the part of Milner to become personally liable. It is said that he obligated himself to cause the formation of the corporation, to cause the properties to be conveyed to the corporation, to cause the corporation to execute an agreement to pay the father of

plaintiffs $25,000 out of the proceeds derived from the property, and to instigate and supervise payment from that source. The agreement did in clear terms obligate Milner to cause the corporation to be formed, to cause the property to be conveyed to the corporation, and to cause the corporation to execute the obligation to the father of the plaintiffs. But it failed to disclose any personal obligation on the part of Milner to pay any amount. And it will be read in vain for any implied undertaking on his part to instigate or supervise payment by the corporation out of the proceeds arising from the property. The agreement was clear, complete, and free from ambiguity; and it is not the function of a court in a case of this kind to read language into an unambiguous contract or add a provision imposing personal liability, no matter how reasonable and appropriate it may appear. Elggren v. Snyder, 75 Utah 370, 285 P. 640.

 The next position taken by plaintiffs is that even though the original agreement did not create any personal liability on the part of Milner, the letter written in 1924 created it. In this connection emphasis is placed upon the fact that at several places throughout the letter the pronoun "we" was used; and that when the letter as a whole is considered with the use of the pronoun "we" therein, it is clear that the intent and effect of the instrument was to create a personal obligation on the part of Milner to make payment of the $25,000 referred to in the original agreement. In determining whether the letter created a personal obligation on the part of Milner, its context must be subjected to critical analysis, and it must be viewed in the light of the background against which it was written. As already said, the original agreement did not create any personal obligation on the part of Milner to pay any sum to Frank Knox. The letter made specific reference to the original agreement, and it stated that such original agreement would be kept in mind and reached at the proper time. But nowhere in the letter did Milner make a specific personal promise or commitment to discharge the obligation. And when read in the light of the background it is clear that he did not intend or

purpose to create a personal undertaking to discharge the obligation. The letter failed to contain any language from which it can be fairly inferred that Milner intended to take upon himself for the first time a personal obligation which he had not previously borne, or that he purposed to recognize the existence of a personal obligation to pay any sum to anyone.

While Milner did not bear any personal liability to pay any sum under the agreement of 1909 or that of 1924, he was obligated by the original agreement to cause the corporation within a reasonable time after its organization to execute the instrument in favor of Frank Knox; and he failed to discharge that obligation. The breach of that obligation took place sometime in 1909—within a reasonable time after the organization of the corporation; and the cause of action for such breach accrued at that time. With exceptions having no material bearing here, section 104-12-23, Utah Code 1943, provides that any action upon contract, obligation, or liability founded upon an instrument in writing shall be commenced within six years after the cause of action shall have accrued. Therefore any cause of action based upon Milner's breach of obligation to cause the corporation to execute the instrument in favor of Knox became barred sometime in 1915. The letter from Milner, written in 1924 on behalf of himself and the corporation, constituted an acknowledgment of the undischarged obligation under the original undertaking to cause the execution and delivery of the instrument in favor of Knox, or his successors in interest; and it had the effect of removing the bar of the statute of limitation upon the cause of action for the breach of that obligation. Cf. Weir v. Bauer, 75 Utah 498, 286 P. 936; Salt Lake Transfer Co. v. Shurtliff, 83 Utah 488, 30 P.2d 733; Hottell v. Kemp, 139 Kan. 239, 31 P.2d 64. But the statute started running anew in 1924, and the cause of action again became barred in 1930. The suit was filed long after that time and therefore any cause of action against Milner, or the executor of his estate, for such breach was barred by limitation at the time of the institution of the action.

The judgment, insofar as it dismissed the action against the defendant Milner Corporation, is reversed and the cause remanded; and the judgment, insofar as it dismissed the action against the defendant First Security Bank of Utah, as executor of the estate of A. C. Milner, deceased, is affirmed.

PHILLIPS, Chief Judge (concurring).

I fully concur in that part of the opinion which affirms the judgment as to the defendant, First Security Bank of Utah, Executor of the Estate of A. C. Milner, Deceased.

With respect to that part of the complaint which undertakes to allege that in writing the letter of November 4, 1924, addressed to De Witt Knox and signed by A. C. Milner, Milner acted as the authorized agent of the Milner Corporation and that part of the complaint which undertakes to allege that the Milner Corporation received benefits from the contract of March 16, 1909, sufficient to support an agreement on the part of the Milner Corporation to adopt such contract, it is my opinion that only by a most liberal construction can we say the pleading was good against a motion to dismiss. Nevertheless, I am willing to concur in the holding that the pleading was sufficient and that the motion should have been overruled as to the Milner Corporation.

However, with respect to that portion of the opinion which seems to me to imply that mere proof by the plaintiffs that subsequent to the making of the contract of March 16, 1909, the mining properties were conveyed to the Milner Corporation, would establish that the Milner Corporation received sufficient benefits from the contract of March 16, 1909, to support a binding adoption of such contract by the Milner Corporation, I cannot agree. The recitals of the contract of March 16, 1909, show that all of the consideration moving from Frank Knox was received by A. C. Milner. The facts and circumstances under which the mining properties were conveyed to the Milner Corporation by the heirs or beneficiaries of the estate of Stanley B. Milner are not reflected on this record. It may well be that the Milner Corporation negotiated directly with all such heirs or beneficiaries

and paid full value to them for such mining properties and derived no real or substantial benefit from the contract of March 16, 1909.

A. C. Milner was obligated to cause the Milner Corporation to enter into a contract with Frank Knox to pay Knox $25,000 out of net proceeds or profits from the mining properties. A. C. Milner was interested in having that obligation on his part discharged by the Milner Corporation adopting the contract of March 16, 1909. His interests were adverse to the Milner Corporation, and that being so, he could not bind the corporation under his general authority as president. See Fletcher, Corporations, Permanent Ed., Vol. 3, § 922 et seq.; Kahn v. Perry Zolezzi, Utah, 226 P. 2d 118, 123; Elggren v. Woolley, 64 Utah 183, 228 P. 906.

I think we should leave open for trial on remand the issue of whether the Milner Corporation received any real and substantial benefit from the contract of March 16, 1909, and the issue of whether Milner was duly authorized as the agent of the Milner Corporation, other than by the general authority reposed in him as its president, to write the letter of November 4, 1924.