## VILBIG et al. v. GILLETTE et al.

No. 6092.

Court of Civil Appeals of Texas. Amarillo.

Feb. 19, 1951.

Rehearing Denied March 19, 1951.

Andress & Ramsey, Dallas, for appellants.

Calloway & Reed, Dallas, for appellees.

PITTS, Chief Justice.

This suit involves the construction of the terms of a lease contract concerning the excavation and sale of gravel. On January 26, 1946, appellants, John W. Vilbig, Jr. and Charles A. Vilbig, leased by a written contract from some people whose names were Hanlon the right to excavate, remove and sell gravel, as that term was therein defined by the parties, from 200 acres of land located in Dallas County. Thereafter on April 30, 1946, the Hanlons sold and conveyed the said land to appellees, V. M. Gillette and R. L. Carraway, and at the same time the Hanlons likewise transferred and assigned to appellees the said gravel lease contract, since which date appellees have been the owners and holders thereof.

According to the terms of the transfer and the provisions of the contract appellees

became lessors and appellants were lessees. The life of the contract was for a period of five years from its date, provided, however, that lessees could, by giving a written notice to lessors or either of them, terminate the contract sooner, at will and at any time it appeared to them that the gravel on the premises became exhausted or that the quality or quantity thereof, in their opinion, could not be further mined with a reasonable profit. Lessees agreed to enter upon the premises, mine and remove the gravel with reasonable diligence. As a consideration, lessees agreed to pay lessors 15¢ per cubic yard for gravel "as the term gravel" was therein defined. It was agreed that the term "gravel" meant all gravel and sand or mixtures of gravel, sand, clay and other such substances mined, removed and sold by lessees. As a part of the consideration, the contract further specified that: "In this connection, in the event Lessees during any month do not mine and remove from the premises a quantity of gravel sufficient, at the royalty price above specified, to entitle Lessors to the sum of three hundred dollars, then Lessees nevertheless agree to pay Lessors as a minimum monthly advance on royalty the sum of three hundred dollars. Provided, however, that to the extent that said minimum monthly payment of three hundred dollars shall for any month exceed the amount due the Lessors, by virtue of the yardage of gravel mined and removed at said agreed price of fifteen cents per cubic yard, Lessees shall have the right to thereafter and before the expiration of this lease to mine and remove an amount of gravel at said agreed price without further charge sufficient to equal such excess payment." Lessees also agreed to furnish lessors an itemized statement on or before the 10th day of each month showing the total amount of gravel mined and removed from the premises during the preceding month and to pay lessor at the rate of 15¢ per cubic yard for any amount over and above 2000 cubic yards, which amount at the said price would equal the $300 monthly payment to be advanced under the terms of the contract. At the said time and on the 10th day of each month lessees agreed to pay lessors the sum

of $300 as a minimum advance payment on royalty due lessors for the current month.

The terms of the contract reveal also that lessees "paid" to lessors on the date the contract was executed the sum of $900 "as an advance payment of the minimum monthly royalty to become due lessors under the terms of this agreement" to cover the first three months of the contract. The record further reveals that lessees operated under the terms of the contract and paid lessors satisfactorily until December 10, 1948, at which time they refused to pay lessors the $300 monthly advancements provided for under the terms of the contract and failed also to terminate the contract, as they had a right to do under its terms, but they still claimed to be lessees under the terms of the contract and continued to mine and remove gravel, sand, etc., from the premises.

Such resulted in the filing of this suit by lessors as appellees herein for a total sum of $4500 claiming monthly payments of $300 due them by lessees as appellants herein for a period of fifteen months, from December 10, 1948, to and including March,1950. The case was tried to the court without a jury and judgment was rendered for appellees for the amount sued for with interest thereon less an offset of $1000 allowed appellants.

Appellants have conceded that there is little controversy about the facts in this case. They have perfected their appeal and contend that the contract did not call for minimum royalty payments but it only called for advancements on royalty, which did not constitute an unconditional obligation to pay except from the gravel fund so long as the gravel lasted. They further contend that there was not sufficient gravel to equal the advanced payments already made and they sued appellees in a cross action for recovery of the excess payments already made. However the trial court denied them any recovery on their cross action and justified such action by its findings and conclusions. The trial court found and concluded that appellees had sold to parties other than appellants $1000 worth of gravel as that term was agreed upon by the parties and permitted its removal from the premises.

For that reason it allowed appellants an offset of $1000 against appellees and charged it against them in the judgment inasmuch as appellants had the exclusive right to the gravel on the premises.

The trial court further found that during the full period of time appellants had mined and removed from the premises a total of 5166 cubic yards of actual gravel, as distinguished from sand or sandy loam, and 8243 cubic yards of sand or sandy loam, aggregating 13,409 cubic yards of gravel, as that term had been defined by the parties in the contract, for which appellants had paid appellees. The trial court further found and concluded, in effect, that there was still an abundance of gravel, as that term had been defined by the parties in the contract, on the premises which could be profitably mined and marketed; that appellants had agreed to pay appellees a minimum royalty payment of $300 per month during the life of the contract, unless the same was terminated by appellants as provided therein; that the only way appellants could be relieved of their obligation to pay in advance the $300 monthly minimum royalty during the life of the lease contract would be to exercise their option to terminate the said contract as provided for by its terms and that the parties had so construed the terms of the contract until December 10, 1948, when appellants refused to make further advanced payments but still declined to terminate the contract as they had a right to do. The trial court likewise found that on or about December 10, 1948, appellants advised appellees that unless appellees would reduce the monthly minimum royalty payments from $300 to $100 per month, appellants would not make any further advance payments; that appellees refused to accede to appellants' demands and appellants then defaulted in their monthly payments of $300 in advance, which resulted in the filing of this suit.

■ In effect, the trial court found in support of its judgment that the contract provided for minimum monthly payments in advance to insure lessors (appellees) of at least $300 per month on the lease contract and that appellants defaulted in their monthly payments in advance and thus breached the terms of the contract because appellees refused, during the life of the existing contract, to enter into a new and different contract, which would contain a change in consideration. Appellants concede there is little controversy about the facts in this case. They asked for findings of the trial court and such were filed. Such findings in part have been heretofore stated. Appellants have not challenged by exception any of the trial court's findings. Neither have they asked for additional findings nor have they charged in any assignment of error that the trial court's findings were not supported by the evidence. It was held in the case of Boyd v. Boyd, Tex.Civ.App., 207 S.W.2d 969, that an appellate court must accept as true the findings of fact filed by the trial court and not challenged by exceptions thereto.

■ It is our opinion that appellants and this court are bound by the trial court's findings which refute the claims made by appellants as to the insufficiency of the gravel, as that term was used in the contract. We conclude further that the terms of the lease contract viewed as a whole were clear and unambiguous and the trial court properly held that the minimum monthly payments of $300 constituted a part of the consideration to be paid in advance by appellants to appellees and that such were not advancements made out of some special or particular fund to be accounted for later as contended by appellants. Appellants attempted to make a distinction between the case at bar and the facts and rules of law laid down in the case of Fort Worth Sand & Gravel Co. v. Peters, Tex.Civ. App., 103 S.W.2d 407, writ dismissed, upon which appellees rely to some extent. But the contracts in the two cases were very similar and it is our opinion that some of the rules of law enunciated in that case apply to the facts found by the trial court to exist in the case at bar.

For the reasons stated it is our opinion that appellants' points of error should all be overruled and the judgment of the trial court affirmed and it is so ordered.