**FILTROL CORP.   v.   LOOSE et al.**
**LOOSE et al.   v.   FILTROL CORP.**

Nos. 4710, 4711.

United States Court of Appeals,
Tenth Circuit.

Dec. 26, 1953.

Rehearing Denied Jan. 22, 1954.

Rich, Elton & Mangum, Salt Lake City, Utah, H. A. Rich, Salt Lake City, Utah, on the brief, for appellant and cross-appellee.

Elias Hansen, Salt Lake City, Utah, on the brief, for appellees and cross-appellants.

Before HUXMAN, MURRAH and PICKETT, United States Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by lessors to recover minimum royalty payments under a written mining lease. Clarence A. Loose and W. Dean Loose, appellees in Number 4710 and appellants in Number 4711, were the owners of a mining claim in Utah County, Utah. On November 19, 1949, they executed a mining lease to Willard P. Fuller, Jr., and Leonard Ryan as lessees. This lease was subsequently assigned to Filtrol Corporation, appellant in Number 4710 and appellee in Number 4711. At the time of its assignment, some modifications were made to the lease but they did not materially affect the provisions in controversy herein. The lease so far as material gave the lessees the right to mine and sell maple clay found on the premises. The original lease provided that "All maple clay sold by lessees shall be subject to the following royalty schedule which lessees agree to pay lessors." The original payment of 60 cents per ton was changed by amendment to 90 cents per ton.

The main controversy centers around the following provisions of the original lease, which remained in the amended lease and which for identification we designate as Paragraph A. "Lessors may terminate and cancel this lease by giving thirty days written notice to lessees if on December 31st of each year commencing in 1950 there has not been payment made to lessors of a minimum of $600.00 in royalties on or before said 31st day of December of each year. If $600.00 as aforesaid is not due as royalties lessees may pay said sum to lessors and shall receive credit therefor on royalty payments subsequently due."

The lease also contained a paragraph herein designated B, providing that lessees might terminate the lease any time after January 1, 1950, by "giving to lessors sixty days notice in writing of any intention of lessees to terminate this agreement, and lessees shall upon such notice, and after said sixty days notice

be relieved of all further obligations hereunder, except as to any sums or amounts then due to the lessors under the terms of this Agreement."

The lease also reserved to lessors the right to use "50% of the capacity of existing shafts or extensions thereof," and also reserved "the right to use 15% of the capacity of any mine openings constructed by lessees as long as such use by lessors does not unreasonably hinder lessees operations."

In count one of their complaint, plaintiffs sought recovery of royalty payments for 1951 in the sum of $600. In count two they sought recovery of damages of $3,420 to a timbered shaft on the lease when Filtrol took possession. In a second cause of action they sought recovery of $500 for the use of 2,500 gallons of water. Subsequent to the institution of the original action and after January 1, 1953, they filed a supplemental petition seeking recovery of an additional sum of $600 as royalties for the year 1952.

The trial court entered judgment for plaintiffs for $600 and interest on the first cause of action and for $2.50 for the value of the water on the second cause of action. It retained jurisdiction for the purpose of requiring the defendant to restore the exploratory shaft to its original condition, if and when the plaintiffs or their successors in interest shall show a bona fide intention to use it. The trial court found that plaintiffs were also entitled to $600 from Filtrol as minimum advance rental for the year 1953 but refused to enter judgment therefor because plaintiffs were not entitled to receive this sum because their action was commenced before December 31, 1952, when they became entitled to this additional sum. In Number 4710 Filtrol has appealed from the judgment rendered against it and in Number 4711 Clarence E. Loose and W. Dean Loose, the lessors, have appealed from that portion of the judgment of the court refusing to enter an additional judgment of $600 for minimum royalty payments the court found were due for 1953.

The original lessees apparently mined no clay and shipped no clay while they held the premises under their lease but on December 24, 1950, they paid lessors the sum of $600 under the lease. During July, 1951, Filtrol shipped 392.56 tons of commercial quality clay upon which, under the terms of the lease, there was due lessors as royalties the sum of $353.30. Payment of that amount was made by Filtrol by crediting it against the advancement of $600 made in December of 1950. No further payment was made by Filtrol to the lessors and apparently no mining operations were carried on after the month of July, 1951. It seems to be without dispute that all the clay of commercial quality had been mined from the premises at that time.

With respect to the payment of the $600 for which judgment was entered, the controversy centers around the interpretation to be placed upon the paragraph designated A herein. The trial court held in effect by its Conclusion of Law No. 2 that the contract provided for guaranteed advance royalty payments of $600 per annum. Thus it concluded that under the lease "there became due and payable to the plaintiffs by the defendants on December 31, 1951 the sum of $600.00 as advance minimum royalties for the year 1952 * * *." This conclusion is obviously in error. We can read nothing into Paragraph A which, to illustrate, would require the lessees on December 31, 1951, to pay $600 as royalties for the year 1952, as found by the court. But in any event the problem is the same, namely, do the provisions of Paragraph A obligate the lessees to pay royalty of $600 for each year during which the lease is in force, even though the royalties from the mining operations at 90 cents per ton for each ton mined and sold do not equal that amount.

The legal principles for the construction of contracts are well charted and are without dispute and, therefore, need no extended discussion. Unless a contract is ambiguous or vague in its terms, the intentions of the parties must be gleaned from the four corners of the contract.[1] In construing a contract, the duty of the court is to determine what the contract is and not to make a new one for the parties.[2] It is only when there is ambiguity or lack of clarity in the terms of the contract that we look beyond it to ascertain its meaning.[3]

The contract will be searched in vain for any language by which lessees specifically agreed or bound themselves in any event to pay $600 royalties each year if the royalties on the tonnage basis from the mining operations did not equal that amount. The only agreement to pay royalties is found in the provision fixing the royalties on a tonnage basis at 60 cents, subsequently raised to 90 cents, per ton. That provision provides that "All maple clay sold by lessees shall be subject to the following royalty schedule *which lessees agree to pay lessors.*" That is the only absolute obligation assumed by the lessees under the terms of the contract.

We think it is quite obvious from the contract that the parties contemplated considerable royalties on the ton-

1. McCrabb v. Moulton, 8 Cir., 124 F.2d 689; Simpson Bros. v. District of Columbia, 85 U.S.App.D.C. 275, 179 F.2d 430; Buchanan v. Swift, 7 Cir., 130 F.2d 483; William J. Lemp Brewing Co. v. Ems Brewing Co., 7 Cir., 164 F.2d 290, certiorari denied, 333 U.S. 863, 68 S.Ct. 745, 92 L.Ed. 1142; Lion Oil Co. v. Gulf Oil Corp., 5 Cir., 181 F.2d 731.

2. Elggren v. Snyder, 75 Utah 370, 285 P. 640; Chicago & N. W. Ry Co. v. Chicago Packaged Fuel Co., 7 Cir., 195 F.2d 467, certiorari denied, 344 U.S. 832, 73 S.Ct.

39; Tahir Erk v. Glenn L. Martin Co., 4 Cir., 143 F.2d 232; Pure Oil Co. v. Petrolite Corp., 5 Cir., 158 F.2d 503, certiorari denied, 330 U.S. 834, 67 S.Ct. 970, 91 L.Ed. 1282; Tennessee Gas Transmission Co. v. Bayles, D.C., 74 F. Supp. 258.

3. Navajo Production Corp. v. Panhandle Eastern Pipe Line Co., 5 Cir., 132 F.2d 1; In re Read-York, Inc., 7 Cir., 152 F.2d 313; Morse v. Morse, 108 Ind.App. 140, 27 N.E.2d 392.

nage basis and that they would at least equal $600 per year. It was because of this and to give the lessor the right to cancel if the expectations were not reached that Paragraph A was inserted, giving them the right to cancel the lease if at the close of the year the mining operations had not produced the royalties in an amount equalling $600. This construction is borne out by other provisions of the lease requiring the lessees to pay the royalties not later than ten days after they had sold the clay, to in good faith sell all maple clay produced and to themselves use no clay. That Paragraph A was inserted to give the lessors the option to cancel the lease if their expectations were not realized and if the mining operations had not produced a minimum royalty of $600 seems clear from the language stating that "If $600 as aforesaid is not due as royalties * * *." That language can mean only that if $600 has not been earned from the mining operations and paid to the lessors by the close of the year they had the right to terminate the lease, unless the lessees chose to avail themselves of the privilege granted by the last sentence of that paragraph, to pay the difference and thus prevent a cancellation of the lease. But nowhere in this paragraph did the lessees absolutely agree and bind themselves to pay such sum or any sum other than the 90 cents per ton for clay actually mined. The language "If $600.00 as aforesaid is not due as royalties * * *" negatives the contention that there was an absolute obligation to pay $600 because then there would be due in all cases $600. The language is that they "may pay" not "must pay". While the word "may" is a word of various meanings and on occasion is construed as meaning "must", it is ordinarily used as implying permission or discretional and not mandatory action or conduct [4] and we think that is the sense in which it was used in Paragraph A. Thus the lessors may terminate and cancel the lease but they are not required to do so and likewise the lessees may pay the difference, if no tonnage royalties have been received, and prevent a cancellation of the lease, but they are not required to do so and may permit the lessors to terminate the lease.

It does not follow, as contended for by the lessors, that such a construction makes meaningless the provision of Paragraph 14 of the original lease, incorporated into the amended lease, providing that "Lessees shall have the right to renew this lease for an additional term of five years * * * and provided further that the minimum royalty payments *required* to be made on or before the 31st day of December of each and every year * * *." It is urged that the word "required" is mandatory and that by this language lessees recognized that they were required to make annual payments of royalty on or before December 31 of each year in the amount of $600. This paragraph must be read in connection with Paragraph A and, when so read, it means only that lessees are required to make up any deficit existing in royalty payments below $600 in any year, if they would avail themselves of the right to extend the lease as provided for in Paragraph 14. Obviously it would be needless to grant an extension of the lease if the next day it could be cancelled because the lessor had not during the year ending December 31st received at least $600.

The facts in this case distinguish it from Rocky Mountain Fuel Co. v. Albion Realty & Securities Co., 10 Cir., 70 F. 2d 212, upon which Filtrol relies, and cases like Anderson v. United Coal & Coke Co., 67 Wyo. 536, 227 P.2d 700, Vilbig v. Gillette, Tex.Civ.App., 238 S. W.2d 569, and Lehigh Zinc & Iron Co. v. Bamford, 150 U.S. 665, 14 S.Ct. 219, 37 L.Ed. 1215. In the Rocky Mountain Fuel Company case [70 F.2d 214] the lessee agreed to pay a royalty of 12½ cents per ton on each ton of coal mined and agreed to pay said royalty "on not less than sixteen hundred sixty-six and two thirds (1666⅔) tons of coal during

4. 57 C.J.S., Page 456.

each and every calendar month of the term of this lease whether coal is mined or not". In the Anderson case [67 Wyo. 536, 227 P.2d 701] a coal mining lease was involved in which the lessee agreed to pay a royalty of 15 cents per ton but the lease further provided "that the Lessee shall pay to the Lessor, as royalties, not less than the sum of one thousand ($1,000) dollars per month, * * *." Similar provisions were found in the mining leases in the other cases. In all the cases the courts held that there was an absolute unconditional promise to pay these minimum amounts and the failure to recoup from future operations provided for in the lease did not relieve the lessees from this obligation merely because they were not sufficient to return the guaranteed payment.

The lessors also claimed damages for the value of a mining shaft sunk by the original lessees on the premises and destroyed by Filtrol in its mining operations. It predicates this claim on an alleged breach of the contract reserving to lessors the right to use 15% of the capacity of any mine opening constructed by lessees as long as such use by lessors did not unreasonably hinder lessees' operations.

▆▆▆▆ The evidence shows that the shaft was sunk to a depth of approximately 50 feet; that the top 18 feet were timbered; that commercial clay surrounded this shaft; that the clay extended from about 3 feet below the surface of the earth for about 12 feet down; that in removing the clay Filtrol removed the top 15 feet of the surface soil. Under the terms of the lease, the lessees were obligated to perform the work according to the best mining practices. The evidence establishes that it was the general mining practice in the area to use the open pit method of removing the clay from the bedrock. It must, therefore, be presumed that both parties had that method of mining in mind in executing the agreement. Filtrol was obligated to remove all the clay including that immediately adjacent to this ex-

ploratory shaft. It follows that it was, therefore, necessary to remove the top 15 feet of the earth adjacent to the shaft. The best mining practices would require the utmost precaution for both the safety of the men and heavy equipment in removing the clay around the shaft opening. The evidence is that this could be done only by filling in the shaft. It must be remembered that this shaft was dug by the predecessor lessees to enable lessees to discharge their obligation under the lease and the rights of the lessors with respect to the shaft can be no greater against Filtrol than against the original lessees. Lessors were entitled to the use of 15% of the capacity of this shaft, only if such use did not interfere with the discharge of lessees' obligations to safely mine all the commercial clay. Permitting the shaft to remain in the middle of the clay bed during the mining operations would have made it very difficult, if not impossible, to remove all the clay. It was, therefore, necessary for Filtrol to fill in the shaft. Under these circumstances, the lessors had no right to the use of this shaft or interest therein. Since Filtrol had the right to fill in the shaft in performance of its obligations under the lease, it was under no legal duty thereafter to restore the shaft so that the lessors might use it in the future, if they so desired. No question is raised with respect to the judgment for the use of the water.

The judgment of the trial court for $600 and interest in favor of the plaintiff and its judgment reserving jurisdiction of the cause for the sole purpose of requiring Filtrol to restore the shaft to the same condition that such shaft was in when it took possession, when the plaintiffs or their successors in interest shall show a bona fide intention to use the same, is Reversed and the cause is Remanded with directions to enter judgment for Filtrol. In all other respects, the judgment is Affirmed. The costs are divided, one-third to appellee, Filtrol, and two-thirds to appellants, Clarence C. Loose and W. Dean Loose.